IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. Action No. 2:21-cv-977 |
| v. | ) | |
| | ) | Chief Magistrate Judge |
| PERRY HOMES, INC., | ) | Cynthia Reed Eddy |
| ALLYSON WHITTINGTON, and | ) | |
| ROBERT WHITTINGTON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AMENDED COMPLAINT

The United States of America, by its attorneys, brings this suit against Perry Homes, Inc.,

Allyson Whittington, and Robert Whittington, and alleges as follows:

### Introduction

1.      The United States brings this action to enforce Title VIII of the Civil Rights Act

of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619

("Fair Housing Act" or "FHA").  This action is brought on behalf of Southwestern Pennsylvania

Legal Services, Inc.

### Jurisdiction

2.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345,

and 42 U.S.C. § 3612(o).

3.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the events or

omissions giving rise to the United States' claims occurred in the Western District of

Pennsylvania and because the Defendants and property at issue in this action are located there.

**Parties and the Subject Properties**

4.      Defendant Perry Homes, Inc. ("Perry Homes") is a corporation incorporated in the Commonwealth of Pennsylvania.  Its principal place of business is at 236 Lexington Drive, Cranberry, Pennsylvania, where it operates a rental office for the properties it manages and owns.

5.      Defendant Perry Homes manages and owns three rental properties in Pennsylvania as follows: (1) Old Towne Rentals located at 236 Lexington Drive, Cranberry, Pennsylvania ("Old Towne Rentals"); (2) 312 McKim Street, Zelienople, Pennsylvania ("McKim Street property"); and (3) 111A and 111B Hillside Drive, Zelienople, Pennsylvania ("Hillside Drive property").

6.      Defendant Perry Homes manages, but does not own, a rental property at 322 German Street, Harmony, Pennsylvania ("German Street property").

7.      Defendants Allyson Whittington and Robert Whittington (hereinafter the "Whittingtons") own the German Street property.  Perry Homes acts as the Whittingtons' agent and representative in renting and managing the German Street property.

8.      Defendant Robert Whittington is a majority shareholder and owner of Perry Homes.

9.      Old Towne Rentals is a multi-family apartment complex consisting of approximately 118 rental units.  The German Street property and Hillside Drive property each have two rental units, and the McKim Street property has four rental units.

10.     The properties identified in this Complaint are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

11.     At all relevant times, Perry Homes employed Lori Burnette, Defendant Allyson Whittington, and Carol Mastascusa, who acted as agents of Perry Homes and acted within the scope of their employment with respect to the actions described in this Complaint.

**Factual Allegations**

12.     Southwestern Pennsylvania Legal Services, Inc. ("SWPLS") is a non-profit legal aid organization.  Its mission is to improve and stabilize families, housing, and economic security for low-income and other vulnerable southwestern Pennsylvania residents by providing legal advice and representation.

13.     SWPLS operates a component called the "Fair Housing Law Center" that provides education and legal representation to ensure that Pennsylvanians have access to housing free from discrimination.  In particular, SWPLS' Fair Housing Law Center represents victims of housing discrimination, conducts testing to investigate allegations of housing discrimination throughout western Pennsylvania and northern West Virginia, and educates those in the service area through training and outreach.

14.     SWPLS instructed and trained its fair housing testers to pose as applicants interested in leasing the properties that Perry Homes manages to determine if Perry Homes was making units available to tenants or applicants who have a disability-related need to have an emotional support animal.

15.     At all relevant times, Defendants had a no-pets policy for its properties.

16.     At all relevant times, Defendant Perry Homes had a provision in its lease agreements stating: "No pets or animals of any kind whatsoever will be permitted on or within the herein described premises excepting: NO PETS ALLOWED PLEASE REFER TO PET POLICY."   Perry Homes also had an Addendum to its lease agreements, stating: "We do not

allow any pets to be kept in the apartments. Nor do we allow pets to visit the property or for tenants to pet sit.  This would be a violation of the lease and cause for a tenant to vacate the premises immediately."

17.     At all relevant times, Perry Homes provided a letter to applicants who became renters, stating: "We are no longer accepting any pets at all! Tenants are not allowed to pet sit and pets are not allowed to visit the property.  As such, this is our pet policy:  <u>NO</u> <u>PETS</u> <u>ALLOWED</u>-<u>EVER</u>!" (capitals and underlining in original).  The letter contained signature lines for tenants to acknowledge "this strict [no pets] policy," giving management permission to conduct a random inspection of the tenant's unit if management suspects that a pet is in the unit.

18.     At all relevant times, Perry Homes did not have a written non-discrimination policy or a written reasonable accommodation policy.

19.     From October 2018 through February 2019, SWPLS conducted multiple phone tests to determine if Defendants would allow tenants with a disability-based need for an emotional support animal to live with such animal at the German Street property, McKim Street property, and Old Towne Rental properties.

20.     On October 19, 2018, an SWPLS tester called the rental office at Perry Homes, spoke with the rental agent, and inquired about the availability of a unit at the German Street property.  The agent informed the tester that if she had a pet, she would have to get rid of it, because Perry Homes had a "no-pets" policy.  After the SWPLS tester advised that her husband had an emotional support dog and had documentation from a psychologist for the dog, the agent stated that Perry Homes only accepted service animals that have been specifically trained, like a seizure-detecting dog.

21.     On January 28, 2019, an SWPLS tester called the rental office at Perry Homes, spoke with the rental agent, and inquired about the availability of a unit at the McKim Street property.  After the Perry Homes agent asked whether the tester had any pets, the tester stated that her husband had post-traumatic stress disorder and had an emotional support animal to help him.  The agent asked if the dog "was registered as a service dog," and the tester stated she would check and call back.  The tester called back and stated she believed that because the animal was an emotional support animal, only a letter demonstrating the need for an emotional support animal was required.  The agent responded that Perry Homes only allows "registered service animals" that have been trained for a specific duty, and that unless the tester had documentation that the dog was a registered service animal, Perry Homes would not allow the dog at the property.

22.     On February 17, 2019, an SWPLS tester called the rental office at Perry Homes. The Defendants' agent returned the call the next day, and the tester inquired about an available unit at the McKim Street property.  After discussing the unit, the agent stated that they do not allow pets at the property.  The tester informed the agent that her son had autism and they had recently acquired an emotional support animal for him – a female golden retriever -- who was well-trained to help her son, and asked if the agent could make an exception to the no-pets policy for the dog.  The tester explained that she had all the necessary documentation from her son's doctor.  The agent responded that the no-pets policy could only be waived if the animal was a service animal, that an emotional support animal was different, and that they were not obligated to permit emotional support animals.

23.     On February 18, 2019, an SWPLS tester called the rental office at Perry Homes, spoke with the rental agent, and inquired about the availability of a unit at the Old Towne

Rentals property.  The agent asked if the tester had any pets. The tester stated that her son had an

emotional support dog because of his autism and that she had documentation from her son's

psychologist.  The tester asked if the emotional support dog would be allowed.  The agent

responded that there are "differences between service animals and other animals" or words to

that effect and that only service animals would be allowed.

24.     On February 18, 2019, an SWPLS tester called the rental office at Perry Homes,

spoke with the rental agent, and inquired about the availability of a unit at the Old Town Rentals

property.  After discussing the unit, the tester told the agent that his wife had a stroke and had an

emotional support dog and asked if it would be allowed.  The agent replied that she could not

prohibit a "service specific function support animal."  The tester responded that before he could

consider the unit further, he needed to know whether his wife's emotional support animal would

be permitted.  The agent reiterated that she could not prohibit a "service specific function support

animal."

25.     Additionally, on several occasions since October 2018, Perry Homes refused to

make reasonable accommodations to its no-pets policy for renters who stated they had an

emotional support animal for their disability.

26.     SWPLS suffered injuries as a result of Defendants' actions described in

paragraphs 19-25.  These injuries include, but are not limited to, diversion of resources from

activities that the organization would otherwise have undertaken in order to devote those

resources to identifying, evaluating, investigating, and counteracting Defendants' discriminatory

housing practices.  SWPLS trained and instructed testers, prepared tester profiles, coordinated

tests, organized appropriate follow-up tests, obtained reports from testers, and analyzed the

information in those reports. As a result of this diversion of resources, SWPLS was unable to

undertake other activities it had planned, including, but not limited to, taking steps to develop certain resources to enhance its outreach capabilities, and conducting additional testing and outreach in its service areas.

27.     Defendants' policy and statements excluding persons with disabilities who require emotional support animals from renting Defendants' housing units also frustrated SWPLS' mission to promote and ensure equal access to housing and resulted in the need for additional education, outreach, and remediation activities to counteract the Defendants' discriminatory conduct.

## HUD Complaint and Charge of Discrimination

28.     On August 27, 2019, SWPLS filed a timely complaint of discrimination with the U.S. Department of Housing and Urban Development ("HUD").

29.     In accordance with 42 U.S.C. § 3610, the Secretary of HUD completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report.  Based upon the information gathered in the investigation, the Secretary determined under 42 U.S.C. § 3610(g)(1) that reasonable cause existed to believe the Defendants had violated the Fair Housing Act.

30.     On February 10, 2021, the Secretary issued a Charge of Discrimination under 42 U.S.C. § 3610(g)(2)(A), charging the Defendants with engaging in discriminatory housing practices on the basis of disability.  Specifically, HUD's Charge of Discrimination alleged that the Defendants' discriminatory policy and practices regarding emotional support animals violated 42 U.S.C. §§ 3604(c), 3604(f)(1), 3604(f)(2), and 3604(f)(3)(B) and their implementing regulations.

31.     On February 23, 2021, Defendants Perry Homes and the Whittingtons elected under 42 U.S.C. § 3612(a) to have the claims in the HUD Charge resolved in a civil action filed in federal district court.  On the same date, the HUD Administrative Law Judge issued a Notice of Election to Proceed in United States District Court.

32.     Following the Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action under 42 U.S.C. § 3612(o).  The Defendants and the United States entered into tolling agreements extending the deadline for the United States to commence a civil action to June 25, 2021.

### Count I - Fair Housing Act

33.     The allegations described above are incorporated herein by reference.

34.     By taking the actions set forth above, the Defendants have:

   a.     discriminated in the rental, or otherwise made unavailable or denied a dwelling to a renter (or prospective renter) because of a disability, in violation of 42 U.S.C. § 3604(f)(1);

   b.     discriminated in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2);

   c.     refused to make reasonable accommodations in rules, policies, practices, or services, when such an accommodation may be necessary to afford a person with a disability equal opportunity to use and enjoy her dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B); and,

   d.     made, printed, or published, or caused to be made, printed or published statements with respect to the rental of a dwelling that indicated a

preference, limitation or discrimination based on disability, or an intention
to make any such preference, limitation or discrimination, in violation of
42 U.S.C. § 3604(c).

35.     As a result of the actions of the Defendants as set forth above, SWPLS has been
injured and has suffered damages, and is an "aggrieved person" within the meaning of 42 U.S.C.
§ 3602(i).

36.     SWPLS' resources were diverted and its mission was frustrated due to the
Defendants' discriminatory actions alleged above.  Defendants' discriminatory housing practices
have impaired and continue to impair SWPLS' efforts to ensure equal housing opportunities as
guaranteed by the Fair Housing Act.   The United States seeks damages to compensate SWPLS
for its diversion of resources and frustration of mission caused by the Defendants' discriminatory
conduct.

37.     The Defendants' actions were willful and intentional, and in reckless disregard for
the law.

## Prayer for Relief

WHEREFORE, the United States requests that the Court enter an Order that:

1.     Declares that the Defendants' discriminatory conduct violates the Fair Housing
Act;

2.     Enjoins the Defendants, their agents, employees, successors, and all other persons
in active concert or participation with any of them from discriminating on the basis of disability,
in violation of the Fair Housing Act, and failing or refusing to take such affirmative steps as may
be necessary to prevent the recurrence of any discriminatory conduct in the future;

3.      Awards monetary damages to SWPLS under 42 U.S.C. §§ 3612(o)(3) and

3613(c)(1); and

4.      Awards such additional relief as the interests of justice may require.

Dated: October 8, 2021

Respectfully submitted,

MERRICK B. GARLAND
Attorney General

STEPHEN R. KAUFMAN
Acting United States Attorney
Western District of Pennsylvania

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

___*/s/ Jacqueline Brown*_____
JACQUELINE C. BROWN
Assistant United States Attorney
Civil Division
Office of the U.S. Attorney
Western District of Pennsylvania
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
Tel: (412) 894-7565
Mobile: (412) 721-8693
E-mail:  jacqueline.c.brown@usdoj.gov
PA Bar No. 330010

___*/s/ Beth Pepper*_____
SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section
CATHERINE A. BENDOR
Special Litigation Counsel
BETH PEPPER
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, DC  20002
Tel: (202) 340-0916
E-mail: Beth.Pepper@usdoj.gov

*Attorneys for Plaintiff United States of America*