IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | CASE NO. 2:21-cv-00977 CRE |
| § | |
| PERRY HOMES, INC. § | Magistrate Judge Cynthia Reed Eddy |
| ALLYSON WHITTINGTON, and § | |
| ROBERT WHITTINGTON § | |
| § | |
| Defendants § | |

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO DISMISS

Defendants file this Brief in Support of their contemporaneously filed Motion to Dismiss as follows:

### INTRODUCTION

The Plaintiff claims Defendants did two things that violated the Fair Housing Act. The Amended Complaint [Dkt. 17] alleges Perry Homes has a "no pets" policy for the homes it rents.[1] This is common among renters of real estate and does not violate any part of the Fair Housing Act.[2] The Amended Complaint then alleges that Perry Homes' representatives told several testers working for Southwestern Pennsylvania Legal Services, Inc. ("SWPLS") that Perry Homes would waive its "no pets" policy for a service animal, but not for an untrained emotional support animal ("ESA").[3] There is no allegation that any disabled person was involved in any of the tests. There is no allegation any person with a disability or associated with a person with a disability was denied

---

[1] This and other statements of fact referred to in the Motion are taken from the Amended Complaint itself.
[2] See discussion in part I below.
[3] The Court should note that neither "service animal" nor "emotional support animal" has a statutory or regulatory definition in the Fair Housing Act, making it unclear what any of the participants in the alleged calls meant in terms of the requirements of the FHA.

an opportunity to rent, required to rent under different conditions or denied an accommodation request. There is no allegation that Perry Homes ever made a statement indicating a discriminatory preference against those with disabilities. This lawsuit was filed based on the injury supposedly suffered by SWPLS as a result of what its testers were told, but there is no allegation that SWPLS ever suffered any injury caused by the alleged misconduct beyond conclusory assertions unsupported by any alleged facts. The Amended Complaint fails to state a claim under any part of the Fair Housing Act because it does not allege any injury to SWPLS and it does not allege any act made unlawful by the Fair Housing Act. It should be dismissed pursuant to Rule 12(b)(6).

**I.      The legal standard:**

This Court described the standard for deciding a Motion to Dismiss in *Konias v. PA Dept. of Corrections et al,* 2:19-CV-01530-CRE, 2021 WL 3773540, at *2–3 (W.D. Pa. Aug. 25, 2021). Because the Court is familiar with the standard it is not repeated here.

**II.     The Amended Complaint fails to allege that SWPLS has suffered an injury that makes it an "aggrieved party" entitled to relief under the Fair Housing Act.**

This action was brought by the United States "on behalf of" SWPLS as provided in 42 U.S.C. §3612(o). That section authorizes an action on behalf of an "aggrieved person." 42 U.S.C. §3602(i) defines an "aggrieved person" as one who either "claims to have been injured" or "believes" they will be injured by a discriminatory housing practice. Thus, to state a claim the Amended Complaint must allege that SWPLS has suffered an injury caused by a discriminatory housing practice.[4] Without such an injury, the claims made on behalf of SWPLS under Section 3612(o) necessarily fail.[5]

---

[4] This is in contrast to a claim under 42 U.S.C. §3613, which authorizes a claim by the government on its own behalf.
[5] The absence of any discriminatory housing practice is the subject of Part III below.

In a Fair Housing case standing to sue as an "aggrieved party" is measured by the requirements of Article III of the Constitution.[6] Allegations of standing must, like any other allegations, meet the pleading requirements set out in *Iqbal/Twombly* and succeeding cases. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When the complaining party is an organization, the complaint must allege "concrete and demonstrable injury to the organization's activities." *Am. Leg. Found. v. F.C.C.*, 808 F.2d 84, 91 (D.C. Cir. 1987).

The Amended Complaint contains the following allegations related to the injury supposedly suffered by SWPLS because of Defendants' conduct:

> 26. SWPLS suffered injuries as a result of Defendants' actions described in paragraphs 19-25. These injuries include, but are not limited to, diversion of resources from activities that the organization would otherwise have undertaken in order to devote those resources to identifying, evaluating, investigating, and counteracting Defendants' discriminatory housing practices. SWPLS trained and instructed testers, prepared tester profiles, coordinated tests, organized appropriate follow-up tests, obtained reports from testers, and analyzed the information in those reports. As a result of this diversion of resources, SWPLS was unable to undertake other activities it had planned, including, but not limited to, taking steps to develop certain resources to enhance its outreach capabilities, and conducting additional testing and outreach in its service areas.
>
> 27. Defendants' policy and statements excluding persons with disabilities who require emotional support animals from renting Defendants' housing units also frustrated SWPLS' mission to promote and ensure equal access to housing and resulted in the need for additional education, outreach, and remediation activities to counteract the Defendants' discriminatory conduct.[7]

. . . .

> 36. SWPLS' resources were diverted and its mission was frustrated due to the Defendants' discriminatory actions alleged above. Defendants' discriminatory housing practices have impaired and continue to impair SWPLS' efforts to ensure equal housing opportunities as guaranteed by the Fair Housing Act.[8]

---

[6] *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)
[7] Amended Complaint at pp. 6-7.
[8] Amended Complaint at p. 9.

This kind of pleading has uniformly been found inadequate to survive a motion to dismiss. For example, in *Kingman Park Civic Ass'n v. Gray*, 956 F. Supp. 2d 260, 266 (D.D.C. 2013) the plaintiff's standing allegation was found inadequate because it "failed to identify any 'discrete programmatic concerns [that] are being directly and adversely affected' by the challenged action." In *Shield Our Constitutional Rights and J. v. Hicks*, 2009 WL 3747199, at *5 (D. Md. Nov. 4, 2009) the complaint alleged the plaintiff had:

> spent money on courts, attorneys, times [sic], and efforts to help the victim pursue fair and just treatment in lawsuits ... [and] through its members, staff and counsel, have spent time, efforts and costs to help the victim seek rights protected by Constitutions and Statutes.

The court found these were "conclusory assertions" insufficient to establish that the organization was an aggrieved party. A complaint must include a specific allegation concerning from what program and to what program resources were diverted because "[n]ot every diversion of resources to counteract the defendant's conduct, however, establishes an injury in fact. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010). Thus, when a plaintiff has "offered only a general allegation about its investigation and counteraction of Defendants' discriminatory acts" the allegation fails to plead organizational standing. *Memphis Ctr. for Indep. Living v. Woodglen Village Apartments Partn.*, 2010 WL 145351, at *4 (W.D. Tenn. Jan. 8, 2010). Similarly:

> An organization must allege more than a frustration of its purpose because frustration of an organization's objectives "is the type of abstract concern that does not impart standing."

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). Thus, an allegation that the plaintiff suffered injury "in the form of diversion of [its] resources and frustration of its mission," is conclusory and inadequate in the absence of facts to support it. *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 259 (S.D.N.Y. 2018).

The Amended Complaint does not include any "discrete programmatic concerns" that were directly and adversely affected by Defendants' conduct. Rather, its allegations seem deliberately vague with respect to its programs:

> "activities that the organization would otherwise have undertaken"

> "other activities it had planned, including, but not limited to, taking steps to develop certain resources to enhance its outreach capabilities, and conducting additional testing and outreach in its service areas."

> "additional education, outreach, and remediation activities"

"Activities," and "other activities" say nothing specific at all. The inability to develop "certain resources" to enhance SWPLS' "outreach capabilities" is similarly vague. Finally the phrase "education, outreach and remediation activities" simply summarizes what SWPLS does.[9] None of these allegations identify a specific program that SWPLS could not pursue or a specific activity SWPLS cannot engage in because of the Defendants' conduct.

The Amended Complaint also fails to allege that SWPLS' testing program was in response to some misconduct by the Defendants. The Third Circuit confronted a similar situation in *Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers,* 141 F.3d 71 (3d Cir. 1998). The plaintiff claimed it had suffered an injury because of the expense of investigating discrimination in advertising but did not allege that it was "motivated by the advertisements at issue in this suit or by a complaint about advertising." *Id.* at 78. Without an allegation tying the cost of investigation to the activities of the defendant the plaintiff failed to show an injury that would give rise to standing to sue. *Id.* at 78-79.[10]

---

[9] See, Amended Complaint ¶¶12-13.
[10] Cases distinguishing *Montgomery Newspapers* inevitably rely on the difference between a stand-alone investigation and an investigation "in response to defendants' allegedly unlawful conduct." See, *Disability Rights Pennsylvania v. Pennsylvania Dept. of Human Services*, 2020 WL 1491186, at *5 (M.D. Pa. Mar. 27, 2020) and cases cited therein. Other Circuits that disagree with

Like the plaintiff in *Montgomery News* SWPLS has not alleged that it engaged in testing in response to discrimination. Instead it sought to manufacture the injury on which its claims are based. If that were permitted, "any litigant could create injury in fact by bringing a case, and Article III would present no real limitation." *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990). The government's claim rests entirely on SWPLS being an "aggrieved person" and the absence of sufficient allegations of injury requires that its claims be dismissed pursuant to Rule 12(b)(1) and 12(b)(6).

**III.    The Amened Complaint fails to allege any discriminatory housing practice that gave rise to an injury to SWPLS.**

SWPLS can only be an "aggrieved person" if it suffered an injury caused by a discriminatory housing practice; that is, "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." 42 U.S.C. §3602(f). The Amended Complaint claims SWPLS was injured by violations of Sections 3604(c), (f)(1), (f)(2) and (f)(3)(B). There are no plausible allegations of a violation of any of these subsections.

**A.    The Amended Complaint fails to allege a violation of 42 U.S.C §3604(c).**

Section 3604(c) prohibits what is commonly called advertising injury; that is:

> any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

The Amended Complaint alleges two kinds of statements made by Perry Homes; that Perry Homes told testers that it has a "no pets" policy and that Perry Homes told testers that it grants animal

---

*Montgomery Newspapers* still insist that the defendant's conduct *cause* the alleged injury. See, *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 Fed.Appx. 469, 474 (6th Cir. 2006) (not for publication) ["the circuits generally agree that an organization meets Article III standing requirements where it can show that the defendant's alleged violations of the Fair Housing Act *caused* it to divert resources from other projects or devote additional resources to a particular project in order to combat the alleged discrimination." (emphasis added)].

accommodations under Section 3604(f)(3)(B) only for specially trained service animals. Neither constitutes a violation of Section 3604(c) because neither evidences any preference, limitation or discrimination based on disability.[11]

### 1. Alleging a "no pets" policy does not state a claim under Section 3604(c) of the Fair Housing Act.

The repeated allegation that Perry Homes had a "no pets" policy is not sufficient to state a claim for disability discrimination under Section 3604(c) because having a "no pets" policy does not indicate an intent to discriminate. In *Hawn v. Shoreline Towers Phase I Condo. Ass'n, Inc.*, 2009 WL 691378, at *3 (N.D. Fla. Mar. 12, 2009), aff'd sub nom. *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 Fed. Appx. 464 (11th Cir. 2009) (unpublished) the Court rejected a claim that by posting a "No Animals Allowed" sign the defendant violated Section 3604(c). Similarly, in *Fair Hous. Resources Ctr., Inc. v. DJM's 4 Reasons Ltd.*, 499 Fed. Appx. 414, 416 (6th Cir. 2012) (unpublished) the Court upheld a jury verdict in favor of a landlord whose no pets policy had been the subject of calls by testers. Nothing in the Fair Housing Act forbids a landlord to prohibit pets, and so the allegation that Perry Homes told testers it had a "no pets" policy cannot support a claim under §3604(c).

In addition, a "no pets" policy, no matter how emphatically stated, does not express any preference related to disability because assistance animals that must be accommodated by a landlord like Perry Homes are not "pets." This has been stated repeatedly in publications from the Department of Housing and Urban Development. In its most recent Notice concerning assistance animals HUD states clearly: "Assistance animals are not pets."[12] HUD took the same position as

---

[11] Because "disability" is now the preferred term this Motion will use "disability" as if it were a synonym for "handicap" although the words are not synonymous based on their definitions under the ADA and FHA.

[12] FHEO-2020-01 issued January 28, 2020 at page 3.

early as 2013.[13] Since assistance animals are not "pets," a "no pets" policy cannot be reasonably interpreted as expressing a discriminatory preference related to disability; otherwise landlords like Perry Homes could be sued for discrimination when using language that HUD has specifically found does not apply to animals that might be the proper subject of an accommodation request.

    **2.    Alleging communication of the "service animal only" policy does not state a claim under Section 3604(c).**

Whether a statement indicates a discriminatory preference in violation of Section 3604(c) is based on an "ordinary reader" or "ordinary listener" standard. "[E]very circuit that has considered a claim under section 3604(c) has held that an objective 'ordinary reader' standard should be applied in determining what is 'indicated' by a statement. *Jancik v. Dept. of Hous. and Urb. Dev.*, 44 F.3d 553, 556 (7th Cir. 1995). "An ordinary listener hears statements in context and "is neither the most suspicious nor the most insensitive of our citizenry." *Short v. Manhattan Apartments, Inc.*, 916 F. Supp. 2d 375, 394 (S.D.N.Y. 2012). Under the circumstances alleged in the Amended Complaint no ordinary listener would interpret what Perry Homes said as an indication of a preference, limitation or discrimination based on disability. Every caller was told Perry Homes would rent to someone with a disability. Every caller was told Perry Homes is willing to waive its no pet rule as a Fair Housing Act accommodation for those with disabilities. Perry Homes' reluctance to waive its no pet rule for untrained emotional support animals is not a limitation based on disability, but a limitation based on a single specific kind of accommodation. No ordinary person would interpret a limit on a single type of accommodation as a limitation based on disability when it was made clear to every tester that Perry Homes will waive its no pets rule as an accommodation for those with disabilities.

---

[13] See, FHEO-2013-01 issued April 25, 2013 at page 1.

The difference between a preference for or limitation on a kind of tenant and a preference for or limitation on a particular kind of accommodation is critical because the Fair Housing Act does not require that a landlord grant whatever accommodation a tenant or prospective tenant desires. Although a landlord must make reasonable accommodations, "it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012). The statements allegedly made by Perry Homes only indicated that the implied accommodation of choice for the person calling was not available. The statements did not indicate that Perry Homes would not rent to someone with a disability or even that Perry Homes would not grant an accommodation of a different sort. None of the callers is alleged to have told Perry Homes that an ESA was the only accommodation that would work for the supposed disability. Nowhere does the Amended Complaint allege that an ESA is in fact the only way a person with one of the claimed disabilities can equally use and enjoy a dwelling.  An offer of an alternative accommodation could never be reasonably interpreted as an effort to drive away those with disabilities, especially when Perry Homes was never told by the caller that the alternative it offered was somehow unreasonable or inadequate.

Many of the allegations include the claim that the caller said they had a letter or a letter from a psychologist. The mere existence of such a letter means nothing with respect to whether a person has a disability or a disability related need for an accommodation. On November 6, 2019 HUD sent a letter to the Fair Trade Commission requesting the investigation of businesses selling ESA letters because, in HUD's view, such documentation "is not reliable for purposes of determining whether an individual has a disability or disability-related need for an assistance animal."[14]  Another court has observed that:

---

[14] Attached as Exhibit ___ for the Court's convenience.

> according to the Background Paper prepared for a United States Senate Informational Hearing on the subject of fake service dogs (hereafter, the "Background Paper"), there is a growing problem of people using fake service dogs, which has a "profound" and negative effect "on the disabled, business and medical communities, and the airline industry."

*Sabal Palm Condominiums of Pine Island Ridge Ass'n, Inc. v. Fischer*, 2014 WL 988767, at *2 (S.D. Fla. Mar. 13, 2014). HUD itself does not believe that merely possessing a letter from a psychologist reliably establishes a need for an accommodation, so no ordinary listener would believe that the mere mention of having such a letter indicated that an emotional support animal was the only accommodation that would meet the calling party's needs.

Assuming the allegations in the Amended Complaint are true, Perry Homes told every single tester that it was willing to waive its no pets policy for a person with a disability that had a service animal. No ordinary listener would interpret its refusal to allow one specific kind of accommodation as evidence of an intent to discriminate against those with disabilities. Thus, none of the statements alleged to have been made by Perry Homes violated Section 3604(c).

> **B.  The Amended Complaint fails to allege a violation of 3604(f)(1), (f)(2) and (f)(3)(B) because it fails to allege the existence of a person with a disability.**

As noted above, SWPLS can only be an "aggrieved person" if whatever injury it suffered was caused by an unlawful act of discrimination. Fictional people cannot be victims of the discrimination outlawed by subsections (f)(1), (f)(2) and (f)(3)(B) because these kinds of discrimination can only exist if the victim has a real disability or is associated with a person who has a real disability. "To survive a motion to dismiss on such a claim [under 3604(f)(1)], a plaintiff must allege "(1) that an adverse action making the [dwelling] unavailable occurred, (2) that the action was taken against someone with a 'handicap,' and (3) 'that the adverse action was taken because of a [handicap].'" *Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Assn., Inc.*, 468 F. Supp. 3d 800, 809 (W.D. Tex. 2020). Similarly, "the most fundamental element" of a

disparate treatment claim under § 3604(f)(2) "is that [the] plaintiff must demonstrate that [the] defendant's alleged discrimination was 'because of a handicap.'" *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 178 (3d Cir. 2005) (quoting 42 U.S.C. § 3604(f)(2)). Finally,

> To prevail [on a claim under §3604(f)(3)(B)], one must prove that (1) he is disabled within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the accommodation

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). Nowhere does the Amended Complaint allege that any of the testers had a disability or that the person with a disability they mentioned in their calls was anything other than a fiction. Since a real disabled person is required for there to be unlawful discrimination based on disability the Amended Complaint fails to allege any unlawful act that would make SWPLS an aggrieved person.

One unpublished opinion from the Ninth Circuit holds that discrimination against a non-disabled tester pretending to have a disability can give rise to an injury sufficient to support standing by the organization that did the testing. *Oregon Bureau of Lab. and Industries ex rel. Fair Hous. Council of Oregon v. Chandler Apartments, LLC,* 702 Fed. Appx. 544 (9th Cir. 2017) (unpublished). Notably absent from the *Chandler Apartments* opinion is any explanation of how an organization can be an "aggrieved person" in the absence of an unlawful act of discrimination. However valuable testing may be as a tool to discover discrimination the Supreme Court's holding in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) makes it clear that discrimination based on a lie is not actionable unless the lie is irrelevant to the claim being made. In *Havens* the Court found that a black tester who only pretended to be interested in renting an apartment had not suffered a violation of 42 U.S.C. §3604(a) because that section required a "bona fide offer" to rent. The fact that the landlord intended to deny an offer to rent did not matter because the making of a bona fide offer to rent was required by the language of the

statute. Actionable discrimination could only be found in Section 3604(d), because the prohibition against providing false information based on race did not require an bona fide intent to rent. 455 U.S. at 372.

In the same way, Sections 3604(f)(1), (f)(2) and (f)(3)(B) require a person with a disability, not a lie about the existence of a person with a disability. Nothing in the FHA suggests that Congress intended to outlaw discrimination against those pretending to be disabled, and while testing by disabled individuals finds support in *Havens,* testing by individuals who are not a member of a protected class or associated with a member of a protected class does not.[15]

SWPLS can be an aggrieved person only if its injuries were caused by an unlawful act, and without a real disabled person there can be no unlawful act under Sections 3604(f)(1), (f)(2) or (f)(3)(B). Thus the government's claims on behalf of SWPLS based on those subsections must fail.[16]

### C. There is no allegation of a refusal to rent in violation of Section 3604(f)(1)

A claim under Section 3604(f)(1) requires that the person making the claim have the intent to rent an apartment. Just as the tester in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) could not state a claim under Section 3604(a) because he did not intend to rent an apartment, so these testers cannot be victims of an unlawful refusal to rent when they never intended to rent in the first place. See, *Bowman v. Wildwood of Lubbock, LLC,*

---

[15] HUD's own policy concerning testing, attached as Exhibit 1, notes that to insure HUD has jurisdiction intake specialists in testing cases must confirm, among other things, that tester's characteristics included membership in a protected class. (p. 3)

[16] The Court should note that this is not a question of "tester standing." Under the very specific circumstances described in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114 (1982) a tester who does not intend to rent can suffer an injury under those provisions of the Fair Housing Act that do not require such an intent. Section 3604(f) prohibits discrimination against those who are disabled; not those who merely pretend to be.

2020 WL 10458628, at *6 (N.D. Tex. Oct. 23, 2020). There is also no allegation of any refusal to rent, another critical element in a claim under Section 3604(f)(1).

    **D.**    **There is no allegation of discrimination in the terms and conditions of rental in violation of Section 3604(f)(2).**

Accepting the allegations of the Amended Complaint as true Perry Homes offered to rent its homes to the various callers on exactly the same terms as every other person – no pets allowed. The alleged refusal to waive the "no pets" policy negates the possibility of a claim under Section 3604(f)(2) because a landlord's refusal to waive or modify a policy cannot be a refusal to rent on the same terms and conditions granted other tenants. A landlord might violate either Section 3604(f)(2) or Section 3604(f)(3)(B) but it cannot do both at the same time.

    **E.**    **The Amended Complaint does not state a claim under Section 3604(f)(3)(B) because there is no allegation that an accommodation for an emotional support dog was requested or was necessary.**

Section 3604(f)(3)(B) defines as discrimination the refusal to grant a waiver or modification of a policy or rule when such waiver is reasonable and necessary for a person with a disability to equally use and enjoy a dwelling. Even overlooking the absence of a person with a disability the Amended Complaint fails to allege the remaining elements of a claim under Section 3604(f)(3)(B); that is:

> (2) he [the person with a disability] requested a reasonable accommodation, (3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the accommodation.

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). The Amended Complaint makes the following allegations concerning what the callers said to Perry Homes:

- "the SWPLS tester advised that her husband had an emotional support dog and had documentation from a psychologist for the dog"[17]
- "the tester stated that her husband had post-traumatic stress disorder and had an ESA to help him."[18]
- "The tester informed the agent that her son had autism and they had recently acquired an ESA for him – a female golden retriever -- who was well-trained to help her son,"[19]
- "The tester stated that her son had an emotional support dog because of his autism and that she had documentation from her son's psychologist."[20]
- "the tester told the agent that his wife had a stroke and had an emotional support dog"[21]

None of the testers is alleged to have claimed the fictional relative had a disability; that is, an impairment that substantially limited a major life activity. They claimed impairments, not disabilities. In addition, none of the testers requested an accommodation and none of the testers is alleged to have said their fictional relative needed the animal to equally use and enjoy the apartment. Without those essential allegations there can be no claim under Section 3604(f)(3)(B).

The Plaintiff may claim that in these conversations there was an implicit request for accommodation and an implicit claim of necessity, but the allegations themselves do not support such a claim. All Perry Homes learned in these brief calls was that a person claiming to have a mental or physical impairment owned an emotional support dog. None of the testers ever used the word "need" or anything like it. In response Perry Homes told all the testers that as an alternative to an ESA Perry Homes would accept service dogs. None of the testers is alleged to have told Perry Homes that this alternative was not suitable; it appears instead they just hung up.

To state a claim for refusal to accommodate when an alternative accommodation is offered the plaintiff must at least allege that the alternative is not sufficient. *Vorchheimer v. Philadelphian*

---

[17] Amended Complaint at ¶20
[18] Amended Complaint at ¶21
[19] Amended Complaint at ¶22
[20] Amended Complaint at ¶23
[21] Amended Complaint at ¶24

*Owners Assn.*, 903 F.3d 100 (3d Cir. 2018). In *Vorchheimer* the plaintiff demanded as an accommodation that she be permitted to keep her walking in the building lobby. *Id.* at 112. The defendant proposed instead that her walker could be kept in storage and retrieved for her, that a doorman could fold and unfold it for her, or that she could valet park and leave it in the valet parking area. *Id.* In her amended complaint the Plaintiff failed to allege that any of the offered alternatives was unreasonable, and so her complaint was dismissed based on a failure to plausibly allege that her requested accommodation was "necessary." *Id.* The allegations in the Amended Complaint before the Court are equally deficient. Each caller knew there was an alternative accommodation – a service dog – and nowhere does the Amended Complaint allege that this alternative would not meet the needs of the fictional individual supposedly associated with the caller or that the caller told Perry Homes such a thing.[22]

The world created by the testers was not just fictional, it was incomplete with respect to a claim under the Fair Housing Act. To get from what the testers are alleged to have said all the way to the illegal denial of an accommodation the Court must make a series of inferences that have no factual support in the Amended Complaint. The Court must infer that the mental or physical impairments of the fictional individuals constituted a disability/handicap because they substantially limited a major life activity.[23] The Court must infer that every person with one of the

---

[22] See also, *Weiss v. 2100 Condo. Ass'n, Inc.,* 941 F. Supp. 2d 1337, 1344 (S.D. Fla. 2013) in which the Court granted summary judgment for an HOA based on its finding that the HOA offered a reasonable alternative to the requested accommodation because it was "an alternative accommodation and alteration of the Associations' policies which would effectively meet Plaintiffs' disability related needs."

[23] The Court should note that while different mental and physical impairments were alleged there was no allegation that Perry Homes was told the fictional individuals had a "handicap" as defined in the Fair Housing Act. A handicap requires both a mental or physical impairment and a substantial limitation on a major life activity. See, *Oxford Investments, L.P. v. City of Philadelphia*, 21 F. Supp. 3d 442, 454 (E.D. Pa. 2014). None of the testers is alleged to have used the word "disability" or "handicap" to describe their fictional associate.

mental or physical impairments alleged requires some accommodation to equally use and enjoy a dwelling; after all, none of the testers are alleged to have told Perry Homes such an accommodation is necessary.[24] Finally, the Court must infer that for such persons the *only* accommodation that would allow them to use and enjoy a dwelling is an ESA for there is no such allegation in the Complaint. As noted in *Vorcheimer,* supra, the FHA "requires that an accommodation be essential, not just preferable." 903 F.3d at 105.[25] The fact that the testers said their relative had an impairment and "had" an ESA could give rise to an obligation to accommodate only if no other accommodation would suffice for the fictional associate to equally use and enjoy the dwelling; otherwise the implicitly requested accommodation would not be necessary.

The lack of factual allegations concerning the existence of a disability and the need for the implicitly requested accommodation requires the court to "'make[s] inference upon inferences to provide the facts missing from the complaint." *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 438 (6th Cir. 2016). The Amended Complaint does not meet the requirements of Rule 8 of the Federal Rules of Civil Procedure and must be dismissed.

    **F.**    **The Amended Complaint does not state a claim under Section 3604(f)(3)(B) because there is no allegation of a refusal to grant a requested accommodation.**

Refusal is a necessary element of a claim under Section 3604(f)(3)(B)[26] so the Amended Complaint can only allege unlawful discrimination based on Section 3604(f)(3)(B) if it alleges an actual or constructive refusal to accommodate. There is no allegation of an actual refusal to accommodate. The Amended Complaint admits that Perry Homes told every caller it would grant

---

[24] There is no allegation that any of the fictional associates of the callers could not use and enjoy a dwelling without an accommodation, so it must be inferred that every person with PTSD, autism, MS, or the other unnamed conditions requires some accommodation in order to trigger any obligation under Section 3604(f)(3)(B).

[25] See also, *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012).

[26] *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014).

an accommodation for a service animal. Just as no ordinary listener would interpret the statement that an alternative accommodation is available as an indication of a discriminatory preference, so no ordinary listener would interpret the offer of an alternative accommodation as a refusal to accommodate. Assuming all the allegations in the Amended Complaint are true Perry Homes did not explicitly or constructively refuse to grant an accommodation.

## CONCLUSION

SWPLS conducted a testing campaign that proved only one thing: Perry Homes will grant an accommodation under Section 3604(f)(3)(B) by waiving its "no pets" policy for a person with a disability. There is no allegation of fact that SWPLS suffered an injury because of the calls it made. There is no allegation that any disabled person was a victim of unlawful discrimination. There is no allegation of a refusal to rent or of a refusal to rent on the same terms as other tenants. There is no allegation that any implicitly requested accommodation was necessary for the equal use and enjoyment of the dwelling by the fictional person for whom it was requested. There is no allegation that an implicitly requested accommodation was either actually or constructively denied. Even if all the allegations in the Amended Complaint are assumed to be true it does not state a claim for relief under 42 U.S.C. §3612(o) and should be dismissed.

Signed on October 22, 2021

_____
Richard M. Hunt
Texas State Bar No. 10288700
rhunt@hunthuey.com
*PRO HAC VICE*

HUNT HUEY PLLC
3333 Lee Parkway, Suite 600
Dallas, Texas 75219
Telephone: (214) 641-9182
Facsimile: (214) 279-6124

                                                       /s/
                                          Jen Gilliland Vanasdale
                                          Pennsylvania Bar No. 87407
                                          jennifer@gvlawoffice.com
                                          Gary T. Vanasdale
                                          Pennsylvania Bar No. 87802
                                          gary@gvlawoffice.com

                                          Gilliland Vanasdale Sinatra Law Office, LLC
                                          257 South Main Street
                                          Butler, PA  16001
                                          724.741.0536 phone │ 724.741.0538 fax

                                          ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF CONFERENCE

      I certify that as required by this Court's Standing Order on Rule 12(b) Motions [Dkt. 4] the moving party has made good faith efforts to confer with the nonmovant(s) to determine whether the identified pleading deficiencies properly may be cured by amendment. Specifically, the undersigned provided a draft of this Motion to Dismiss to Plaintiff's counsel and conferred briefly by phone. Plaintiff's then filed the Amended Complaint that is the subject of this Motion. When the Amended Complaint was filed the undersigned confirmed by email that Plaintiff's counsel did not intend to file any further Amended Complaints, although Plaintiff's counsel reserved the right to do so as permitted by the Federal Rules of Civil Procedure.

                                          Richard M. Hunt

## CERTIFICATE OF SERVICE

I certify that on October 22, 2021 the foregoing Motion to Dismiss was served on all counsel of record through the Court's ECF system in accordance with Rule 5 of the Federal Rules of Civil Procedure.

_____
Richard M. Hunt