# EXHIBIT 2



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-2000

OFFICE OF FAIR HOUSING
AND EQUAL OPPORTUNITY

| | |
|---|---|
| **SPECIAL ATTENTION OF:** | |
| HUD Regional and Field Office Directors of Public and Indian Housing (PIH); Housing; Community Planning and Development (CPD); Fair Housing and Equal Opportunity; and Regional Counsel; CPD, PIH, and Housing Program Providers | FHEO Notice: **FHEO-2020-01** Issued: January 28, 2020 Expires: Effective until Amended, Superseded, or Rescinded. |

Subject:  Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act

1. **Purpose:** This notice explains certain obligations of housing providers under the Fair Housing Act (FHA) with respect to animals that individuals with disabilities may request as reasonable accommodations.  There are two types of assistance animals: (1) service animals, and (2) other trained or untrained animals that do work, perform tasks, provide assistance, and/or provide therapeutic emotional support for individuals with disabilities (referred to in this guidance as a "support animal").  Persons with disabilities may request a reasonable accommodation for service animals and other types of assistance animals, including support animals, under the FHA.  This guidance provides housing providers with a set of best practices for complying with the FHA when assessing requests for reasonable accommodations to keep animals in housing, including the information that a housing provider may need to know from a health care professional about an individual's need for an assistance animal in housing.  This guidance replaces HUD's prior guidance, FHEO-2013-01, on housing providers' obligations regarding service animals and assistance animals.  In particular, this guidance provides a set of best practices regarding the type and amount of documentation a housing provider may ask an individual with a disability to provide in support of an accommodation request for a support animal, including documentation of a disability (that is, physical or mental impairments that substantially limit at least one major life activity) or a disability-related need for a support animal when the disability or disability-related need for the animal is non-obvious and not known to the housing provider.  By providing greater clarity through this guidance, HUD seeks to provide housing providers with a tool they may use to reduce burdens that they may face when they are uncertain about the type and amount of documentation they may need and may be permitted to request when an individual seeks to keep a support animal in housing.  Housing providers may be subject to the requirements of several civil rights laws, including but not limited to the FHA, Section 504 of the Rehabilitation Act (Section 504), and the Americans with Disabilities Act (ADA).  This guidance does not address how HUD will process complaints against housing providers under Section 504 or the ADA.

2. **Applicability:** This notice applies to all housing providers covered by the FHA.[1]

3. **Organization:** There are two sections to this notice. The first, "Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act," recommends a set of best practices for complying with the FHA when assessing accommodation requests involving animals to assist housing providers and help them avoid violations of the FHA. The second section to this notice, "Guidance on Documenting an Individual's Need for Assistance Animals in Housing," provides guidance on information that an individual seeking a reasonable accommodation for an assistance animal may need to provide to a housing provider about his or her disability-related need for the requested accommodation, including supporting information from a health care professional.

Questions regarding this notice may be directed to the HUD Office of Fair Housing and Equal Opportunity, Office of the Deputy Assistant Secretary for Enforcement and Programs, or your local HUD Office of Fair Housing and Equal Opportunity.

 

Anna María Farías, Assistant Secretary for
Fair Housing and Equal Opportunity

---

[1] The Fair Housing Act covers virtually all types of housing, including privately owned housing and federally assisted housing, with a few limited exceptions.

## Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act[2]

The Fair Housing Act (FHA) makes it unlawful for a housing provider[3] to refuse to make a reasonable accommodation that a person with a disability may need in order to have equal opportunity to enjoy and use a dwelling.[4] One common request housing providers receive is for a reasonable accommodation to providers' pet or no animal policies so that individuals with disabilities are permitted to use assistance animals in housing,[5] including public and common use areas.

Assistance animals are <u>not pets</u>. They are animals that do work, perform tasks, assist, and/or provide therapeutic emotional support for individuals with disabilities.[6] There are two types of assistance animals: (1) service animals, and (2) other animals that do work, perform tasks, provide assistance, and/or provide therapeutic emotional support for individuals with disabilities (referred to in this guidance as a "support animal").[7] An animal that does not qualify as a service animal or other type of assistance animal is a pet for purposes of the FHA and may be treated as a pet for purposes of the lease and the housing provider's rules and policies. A housing provider may exclude or charge a fee or deposit for pets in its discretion and subject to local law but not for service animals or other assistance animals.[8]

---

[2] This document is an integral part of U.S. Department of Housing and Urban Development Office of Fair Housing and Equal Opportunity Notice FHEO-2020-01, dated January 28, 2020 (sometimes referred to as the "Assistance Animal Notice").

[3] The term "housing provider" refers to any person or entity engaging in conduct covered by the FHA. Courts have applied the FHA to individuals, corporations, partnerships, associations, property owners, housing managers, homeowners and condominium associations, cooperatives, lenders, insurers, real estate agents, brokerage services, state and local governments, colleges and universities, as well as others involved in the provision of housing, residential lending, and other real estate-related services.

[4] 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204. Unless otherwise specified, all citations refer to those authorities effective as of the date of the publication of this guidance.

[5] For purposes of this guidance, the term "housing" refers to all housing covered by the Fair Housing Act, including apartments, condominiums, cooperatives, single family homes, nursing homes, assisted living facilities, group homes, domestic violence shelters, emergency shelters, homeless shelters, dormitories, and other types of housing covered by the FHA.

[6] *See* 24 C.F.R. § 5.303(a).

[7] Under the FHA, a disability is a physical or mental impairment that substantially limits one or more major life activities. *See* 24 C.F.R. § 100.201.

[8] *See* Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Accommodations Under the Fair Housing Act ("Joint Statement"), Q and A 11 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf; *Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt.*, 778 F. Supp. 2d 1028 (D.N.D. 2011). HUD views the Joint Statement as well-reasoned guidance on some of the topics addressed in this guidance. The Joint Statement, available to the public since 2004, has been cited from time to time by courts. *See, e.g., Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1286 (11th Cir. 2014); *Sinisgallo*

As of the date of the issuance of this guidance, FHA complaints concerning denial of reasonable accommodations and disability access comprise almost 60% of all FHA complaints and those involving requests for reasonable accommodations for assistance animals are significantly increasing. In fact, such complaints are one of the most common types of fair housing complaints that HUD receives. In addition, most HUD charges of discrimination against a housing provider following a full investigation involve the denial of a reasonable accommodation to a person who has a physical or mental disability that the housing provider cannot readily observe.[9]

HUD is providing this guidance to help housing providers distinguish between a person with a non-obvious disability who has a legitimate need for an assistance animal and a person without a disability who simply wants to have a pet or avoid the costs and limitations imposed by housing providers' pet policies, such as pet fees or deposits. The guidance may also help persons with a disability who request a reasonable accommodation to use an assistance animal in housing.

While most requests for reasonable accommodations involve one animal, requests sometimes involve more than one animal (for example, a person has a disability-related need for both animals, or two people living together each have a disability-related need for a separate assistance animal). The decision-making process in this guidance can be used for all requests for exceptions or modifications to housing providers' rules, policies, practices, and/or procedures so persons with disabilities can have assistance animals in the housing where they reside.

This guidance is provided as a tool for housing providers and persons with a disability to use at their discretion and provides a set of best practices for addressing requests for reasonable accommodations to keep animals in housing where individuals with disabilities reside or seek to reside. It should be read together with HUD's regulations prohibiting discrimination under the FHA[10] —with which housing providers must comply— and the HUD/Department of Justice (DOJ) Joint Statement on Reasonable Accommodation under the Fair Housing Act, available at https://www.hud.gov/sites/documents/huddojstatement.pdf. A housing provider may also be subject to the Americans with Disabilities Act (ADA) and therefore should also refer to DOJ's regulations implementing Title II and Title III of the ADA at 28 C.F.R. parts 35 and 36 , and DOJ's guidance on service animals, *Frequently Asked Questions about Service Animals and the ADA* at https://www.ada.gov/regs2010/service_animal_qa.html and *ADA Requirements: Service Animals* at https://www.ada.gov/service_animals_2010.htm. This guidance replaces HUD's prior guidance on housing providers' obligations regarding service animals and assistance animals.[11] Housing

---

*v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 336-42 (E.D.N.Y. 2012). However, HUD does not intend to imply that the Joint Statement is independently binding statutory or regulatory authority. HUD understands it to be subject to applicable limitations on the use of guidance. *See* "Treatment as a Guidance Document" on p.5 for a citation of authorities on permissible use of guidance.

[9] *See, e.g.*, *HUD v. Castillo Condominium Ass'n*, No. 12-M-034-FH-9, 2014 HUD ALJ LEXIS 2 (HUD Sec'y, October 02, 2014) aff'd, 821 F.3d 92 (1st Cir. 2016); *HUD v. Riverbay*, No. 11-F-052-FH-18, 2012 HUD ALJ LEXIS 15 (HUD ALJ, May 07, 2012), aff'd, 2012 ALJ LEXIS 19 (HUD Sec'y June 06, 2012).

[10] 24 C.F.R. Part 100.

[11] FHEO-2013-01.

providers should not reassess requests for reasonable accommodations that were granted prior to the issuance of this guidance in compliance with the FHA.

**Treatment as a Guidance Document**

As a guidance document, this document does not expand or alter housing providers' obligations under the Fair Housing Act or HUD's implementing regulations. It should be construed consistently with Executive Order 13891 of October 9, 2019 entitled "Promoting the Rule of Law Through Improved Agency Guidance Documents," Executive Order 13892 of October 9, 2019 entitled "Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication," the Office of Management and Budget Memorandum M-20-02 entitled "Guidance Implementing Executive Order 13891, Titled 'Promoting the Rule of Law Through Improved Agency Guidance Documents,'" the Department of Justice Memorandum of January 25, 2018 entitled "Limiting Use of Agency Guidance Documents in Affirmative Civil Enforcement Cases," and the Department of Justice Memorandum of November 16, 2017 entitled "Prohibition on Improper Guidance Documents."

**Part I:  Service Animals**

The FHA requires housing providers to modify or make exceptions to policies governing animals when it may be necessary to permit persons with disabilities to utilize animals.[12]  Because HUD interprets the FHA to require access for individuals who use service animals, housing providers should initially follow the analysis that DOJ has determined is used for assessing whether an animal is a service animal under the ADA.[13]  The Department of Justice's ADA regulations generally require state and local governments and public accommodations to permit the use of service animals by an individual with a disability.[14]  For support animals and other assistance animals that may be necessary in housing, although the ADA does not provide for access, housing providers must comply with the FHA, which does provide for access.[15]

---

[12] 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204.  See also Pet Ownership for the Elderly and Persons with Disabilities – Final Rule, 73 Fed. Reg. 63833 (Oct. 27, 2008).
[13] 24 C.F.R. § 100.204(b).
[14] 28 C.F.R. §§ 35.136(g); 36.302(c)(7).
[15] Specifically, under the Fair Housing Act, housing providers are obligated to permit, as a reasonable accommodation, the use of animals that work, provide assistance, or perform tasks that benefit persons with disabilities, or provide emotional support to alleviate a symptom of effect of a disability.  Separate regulations govern airlines and other common carriers, which are outside the scope of this guidance.

> **What is a service animal?**
>
> Under the ADA, "*service animal* means any <u>dog</u> that is <u>individually trained</u> to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are <u>not</u> service animals for the purposes of this definition. The work or tasks performed by a service animal must be directly related to the individual's disability."[16]

As a best practice, housing providers may use the following questions to help them determine if an animal is a service animal under the ADA:[17]

1. Is the animal a dog?

    - If "yes," proceed to the next question.
    - If "no," the animal is <u>not</u> a service animal but may be another type of assistance animal for which a reasonable accommodation is needed.[18] Proceed to Part II below.

2. Is it readily apparent that the dog is trained to do work or perform tasks for the benefit of an individual with a disability?

    - If "yes," further inquiries are unnecessary and inappropriate because the animal is a service animal.[19]
    - If "no," proceed to the next question.

> It is *readily apparent* when the dog is observed:
> - guiding an individual who is blind or has low vision
> - pulling a wheelchair
> - providing assistance with stability or balance to an individual with an observable mobility disability[20]

3. It is advisable for the housing provider to limit its inquiries to the following two questions:

    - The housing provider may ask in substance: (1) "Is the animal required because of a

---

[16] 28 C.F.R. §§ 35.104; 36.104 (emphasis added).
[17] 28 C.F.R. §§ 35.136; 36.302(c).
[18] Although a miniature horse is not a service animal, DOJ has determined that the same type of analysis is applied to determine whether a miniature horse should be provided access, although additional considerations, beyond the scope of this guidance, apply. *See* 28 C.F.R. §§ 35.136(i); 36.302(c)(9).
[19] 28 C.F.R. §§ 35.136(f); 36.302(c)(6).
[20] 28 C.F.R. §§ 35.136(f); 36.302(c)(6).

disability?" and (2) "What work or task has the animal been trained to perform?"[21]  Do not ask about the nature or extent of the person's disability, and do not ask for documentation. A housing provider, at its discretion, may make the truth and accuracy of information provided during the process part of the representations made by the tenant under a lease or similar housing agreement to the extent that the lease or agreement requires the truth and accuracy of other material information.

➢ If the answer to question (1) is "yes" and work or a task is identified in response to question (2), grant the requested accommodation, if otherwise reasonable, because the animal qualifies as a service animal.
➢ If the answer to either question is "no" or "none," the animal does not qualify as a service animal under federal law but may be a support animal or other type of assistance animal that needs to be accommodated.  HUD offers guidance to housing providers on this in Part II.

> Performing "work or tasks" means that the dog is trained to take a specific action when needed to assist the person with a disability.
> - If the individual identifies at least one action the dog is trained to take which is helpful to the disability other than emotional support, the dog should be considered a service animal and permitted in housing, including public and common use areas.  Housing providers should not make further inquiries.
> - If no specific work or task is identified, the dog should not be considered a service animal but may be another type of animal for which a reasonable accommodation may be required.  Emotional support, comfort, well-being, and companionship are not a specific work or task for purposes of analysis under the ADA.

For more information, refer to the ADA rules and service animal guidance on DOJ's ADA Home Page at www.ada.gov[22] or call the ADA Information Line at 1-800-514-0301.

**Part II:  Analysis of reasonable accommodation requests under the Fair Housing Act for assistance animals other than service animals**

> A **reasonable accommodation** is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have equal opportunity to use and enjoy a dwelling, including public and common use spaces.

Remember:  While it is not necessary to submit a written request or to use the words "reasonable accommodation," "assistance animal," or any other special words to request a reasonable accommodation under the FHA, persons making a request are encouraged to do so in order to avoid

---

[21] 28 C.F.R. §§ 35.136(f); 36.302(c)(6).
[22] See *Frequently Asked Questions About Service Animals and the ADA* at https://www.ada.gov/regs2010/service_animal_qa.html; *ADA Requirements: Service Animals* at https://www.ada.gov/service_animals_2010.htm.

7

miscommunication.[23] Persons with disabilities may also want to keep a copy of their reasonable accommodation requests and supporting documentation in case there is a later dispute about when or whether a reasonable accommodation request was made. Likewise, housing providers may find it helpful to have a consistently maintained list of reasonable accommodation requests.[24]

A resident may request a reasonable accommodation either before or after acquiring the assistance animal.[25] An accommodation also may be requested after a housing provider seeks to terminate the resident's lease or tenancy because of the animal's presence, although such timing may create an inference against good faith on the part of the person seeking a reasonable accommodation. However, under the FHA, a person with a disability may make a reasonable accommodation request at any time, and the housing provider must consider the reasonable accommodation request even if the resident made the request after bringing the animal into the housing.[26]

As a best practice, housing providers may use the following questions to help them make a decision when the animal does not meet the definition of service animal.[27]

4. Has the individual requested a reasonable accommodation — that is, asked to get or keep an animal in connection with a physical or mental impairment or disability?

Note: The request for a reasonable accommodation with respect to an assistance animal may be oral or written. It may be made by others on behalf of the individual, including a person legally residing in the unit with the requesting individual or a legal guardian or authorized representative.[28]

- ➢ If "yes," proceed to Part III.
- ➢ If "no," the housing provider is not required to grant a reasonable accommodation that has not been requested.

**Part III: Criteria for assessing whether to grant the requested accommodation**

As a best practice, housing providers may use the following questions to help them assess whether

---

[23] See Joint Statement, Q and A 12 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.

[24] See Joint Statement, Q and A 13 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.

[25] *See* Joint Statement, Q and A 12 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.

[26] *See* 24 C.F.R. § 100.204(a).

[27] *See Janush v. Charities Hous. Dev. Corp.*, 169 F.Supp.2d 1133, 1136-37 (N.D. Cal., 2000) (rejecting an argument that a definition of "service dog" should be read into the Fair Housing Act to create a rule that accommodation of animals other than service dogs is per se unreasonable, instead finding that "the law imposes on defendants the obligation to consider each request individually and to grant requests that are reasonable.").

[28] *See* Joint Statement, Q and A 12 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.

8

to grant the requested accommodation.

5. Does the person have an observable disability or does the housing provider (or agent making the determination for the housing provider) already have information giving them reason to believe that the person has a disability?

    ➢ If "yes," skip to question #7 to determine if there is a connection between the person's disability and the animal.
    ➢ If "no," continue to the next question.

> **Observable and Non-Observable Disabilities**
>
> Under the FHA, a disability is a physical or mental impairment that substantially limits one or more major life activities. While some impairments may seem invisible, others can be readily observed. Observable impairments include blindness or low vision, deafness or being hard of hearing, mobility limitations, and other types of impairments with observable symptoms or effects, such as intellectual impairments (including some types of autism), neurological impairments (*e.g.*, stroke, Parkinson's disease, cerebral palsy, epilepsy, or brain injury), mental illness, or other diseases or conditions that affect major life activities or bodily functions.[29] Observable impairments generally tend to be obvious and would not be reasonably attributable to non-medical causes by a lay person.
>
> Certain impairments, however, especially including impairments that may form the basis for a request for an emotional support animal, may not be observable. In those instances, a housing provider may request information regarding both the disability and the disability-related need for the animal. Housing providers are not entitled to know an individual's diagnosis.

6. Has the person requesting the accommodation provided information that reasonably supports that the person seeking the accommodation has a disability?[30]

    ➢ If "yes," proceed to question #7. A housing provider, at its discretion, may make the truth and accuracy of information provided during the process part of the representations made by the tenant under a lease or similar housing agreement to the extent that the lease or agreement requires the truth and accuracy of other material information.
    ➢ If "no," the housing provider is not required to grant the accommodation unless this information is provided but may not deny the accommodation on the grounds that the person requesting the accommodation has not provided this information until the requester has been provided a reasonable opportunity to do so.[31] To assist the person requesting the

---

[29] *See* 24 C.F.R. § 100.201.

[30] *See* Joint Statement, Q and A 17 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.

[31] This would not permit the housing provider to require any independent evaluation or diagnosis specifically obtained for the housing provider or for the housing provider to engage in its own direct

9

accommodation to understand what information the housing provider is seeking, the housing provider is encouraged to direct the requester to the Guidance on Documenting an Individual's Need for Assistance Animals in Housing. Referring the requester to that Guidance will also help ensure that the housing provider receives the disability-related information that is actually needed to make a reasonable accommodation decision.

---

**Information About Disability May Include . . .**

- A determination of disability from a federal, state, or local government agency.
- Receipt of disability benefits or services (Social Security Disability Income (SSDI)), Medicare or Supplemental Security Income (SSI) for a person under age 65, veterans' disability benefits, services from a vocational rehabilitation agency, or disability benefits or services from another federal, state, or local agency.
- Eligibility for housing assistance or a housing voucher received because of disability.
- Information confirming disability from a health care professional – *e.g.*, physician, optometrist, psychiatrist, psychologist, physician's assistant, nurse practitioner, or nurse.

Note that a determination that an individual does not qualify as having a disability for purposes of a benefit or other program does not necessarily mean the individual does not have a disability for purposes of the FHA, Section 504, or the ADA.[32]

---

**Disability Determination**

Note that under DOJ's regulations implementing the ADA Amendments Act of 2008, which HUD considers instructive when determining whether a person has a disability under the FHA, some types of impairments will, in virtually all cases, be found to impose a substantial limitation on a major life activity resulting in a determination of a disability.[33] Examples include deafness, blindness, intellectual disabilities, partially or completely missing limbs or mobility impairments requiring the use of a wheelchair, autism, cancer, cerebral palsy, diabetes, epilepsy, muscular dystrophy, multiple sclerosis, Human Immunodeficiency Virus (HIV) infection, major depressive disorder, bipolar disorder, post-traumatic stress disorder, traumatic brain injury, obsessive compulsive disorder, and schizophrenia.[34] This does not mean that other conditions are not disabilities. It simply means that in virtually all cases these conditions will be covered as disabilities. While housing providers will be unable to observe or identify some of these impairments, individuals with disabilities sometimes voluntarily provide more details about their disability than the housing provider actually needs to make decisions on accommodation requests. When this information is provided, housing providers should consider it.

---

evaluation. *See* Joint Statement, Q and A 17-18 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.
[32] *See* Joint Statement, Q and A 18 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.
[33] *See* 28 C.F.R. §§ 35.108(d)(2); 36.105(d)(2).
[34] *See* 28 C.F.R. §§ 35.108(d)(2)(iii); 36.105(d)(2)(iii).

> **Documentation from the Internet**
>
> Some websites sell certificates, registrations, and licensing documents for assistance animals to anyone who answers certain questions or participates in a short interview and pays a fee. Under the Fair Housing Act, a housing provider may request reliable documentation when an individual requesting a reasonable accommodation has a disability and disability-related need for an accommodation that are not obvious or otherwise known.[35] In HUD's experience, such documentation from the internet is not, by itself, sufficient to reliably establish that an individual has a non-observable disability or disability-related need for an assistance animal.
>
> By contrast, many legitimate, licensed health care professionals deliver services remotely, including over the internet. One reliable form of documentation is a note from a person's health care professional that confirms a person's disability and/or need for an animal when the provider has personal knowledge of the individual.

7. Has the person requesting the accommodation provided information which reasonably supports that the animal does work, performs tasks, provides assistance, and/or provides therapeutic emotional support with respect to the individual's disability?[36]

   ➢ If "yes," proceed to Part IV. A housing provider, at its discretion, may make the truth and accuracy of information provided during the process part of the representations made by the tenant under a lease or similar housing agreement to the extent that the lease or agreement requires the truth and accuracy of other material information.
   ➢ If "no," the housing provider is not required to grant the accommodation unless this information is provided but may not deny the accommodation on the grounds that the person requesting the accommodation has not provided this information until the requester has been provided a reasonable opportunity to do so. To assist the person requesting the accommodation to understand what information the housing provider is seeking, the housing provider is encouraged to direct the requester to the Guidance on Documenting an Individual's Need for Assistance Animals in Housing. Referring the requester to that Guidance will also help ensure that the housing provider receives the disability-related information that is actually needed to make a reasonable accommodation decision.

---

[35] *See* Joint Statement, Q and A 18 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.
[36] *See Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt.*, 778 F. Supp. 2d 1028 (D.N.D. 2011) (determining that, in housing, a broader variety of assistance animals may be necessary as a reasonable accommodation, regardless of specific training).

11

> **Information Confirming Disability-Related Need
> for an Assistance Animal. . .**
>
> - Reasonably supporting information often consists of information from a licensed health care professional – *e.g.*, physician, optometrist, psychiatrist, psychologist, physician's assistant, nurse practitioner, or nurse – general to the condition but specific as to the individual with a disability and the assistance or therapeutic emotional support provided by the animal.
> - A relationship or connection between the disability and the need for the assistance animal must be provided. This is particularly the case where the disability is non-observable, and/or the animal provides therapeutic emotional support.
> - For non-observable disabilities and animals that provide therapeutic emotional support, a housing provider may ask for information that is consistent with that identified in the Guidance on Documenting an Individual's Need for Assistance Animals in Housing (*see Questions 6 and 7) in order to conduct an individualized assessment of whether it must provide the accommodation under the Fair Housing Act. The lack of such documentation in many cases may be reasonable grounds for denying a requested accommodation.

**Part IV: Type of Animal**

8. Is the animal commonly kept in households?

➢ If "yes," the reasonable accommodation should be provided under the FHA unless the general exceptions described below exist.[37]
➢ If "no," a reasonable accommodation need not be provided, but note the very rare circumstances described below.

**Animals commonly kept in households.** If the animal is a dog, cat, small bird, rabbit, hamster, gerbil, other rodent, fish, turtle, or other small, domesticated animal that is traditionally kept in the home for pleasure rather than for commercial purposes, then the reasonable accommodation should be granted because the requestor has provided information confirming that there is a disability-related need for the animal.[38] For purposes of this assessment, reptiles (other than turtles), barnyard animals, monkeys, kangaroos, and other non-domesticated animals are not considered common household animals.

**Unique animals.** If the individual is requesting to keep a unique type of animal that is not commonly kept in households as described above, then the requestor has the substantial burden of demonstrating a disability-related therapeutic need for the specific animal or the specific type of animal. The individual is encouraged to submit documentation from a health care professional confirming the need for this animal, which includes information of the type set out in the Guidance on Documenting an Individual's Need for Assistance Animals in Housing. While this guidance

---

[37] *See, e.g.*, *Majors v. Hous. Auth. of the Cnty. of DeKalb Georgia,* 652 F.2d 454, 457 (5th Cir. 1981) (enforcing a "no pets" rule against an individual with a disability who needs an animal as a reasonable accommodation effectively deprives the individual of the benefits of the housing).
[38] *See* 24 C.F.R. § 100.204(a).

12

does not establish any type of new documentary threshold, the lack of such documentation in many cases may be reasonable grounds for denying a requested accommodation. If the housing provider enforces a "no pets" policy or a policy prohibiting the type of animal the individual seeks to have, the housing provider may take reasonable steps to enforce the policy if the requester obtains the animal before submitting reliable documentation from a health care provider that reasonably supports the requestor's disability-related need for the animal. As a best practice, the housing provider should make a determination promptly, generally within 10 days of receiving documentation.[39]

---

**Reasonable accommodations may be necessary when the need for a unique animal involves unique circumstances …**

Examples:
- The animal is individually trained to do work or perform tasks that cannot be performed by a dog.
- Information from a health care professional confirms that:
    - Allergies prevent the person from using a dog; or
    - Without the animal, the symptoms or effects of the person's disability will be significantly increased.
- The individual seeks to keep the animal outdoors at a house with a fenced yard where the animal can be appropriately maintained.

---

**Example: A Unique Type of Support Animal**

An individually trained capuchin monkey performs tasks for a person with paralysis caused by a spinal cord injury. The monkey has been trained to retrieve a bottle of water from the refrigerator, unscrew the cap, insert a straw, and place the bottle in a holder so the individual can get a drink of water. The monkey is also trained to switch lights on and off and retrieve requested items from inside cabinets. The individual has a disability-related need for this specific type of animal because the monkey can use its hands to perform manual tasks that a service dog cannot perform.

---

**Part V: General Considerations**

- The FHA does not require a dwelling to be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others.[40] A housing provider may, therefore, refuse a reasonable accommodation for an assistance animal if the specific animal poses a direct threat that cannot be eliminated or reduced to an acceptable level through actions the individual takes to maintain or control the animal (e.g., keeping the

---

[39] *See* Joint Statement, Q and A 15 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.
[40] *See* 24 C.F.R. § 100.202(d).

13

animal in a secure enclosure).[41]
- A reasonable accommodation may include a reasonable accommodation to a land use and zoning law, Homeowners Association (HOA) rule, or co-op rule.[42]
- A housing provider may not charge a fee for processing a reasonable accommodation request.[43]
- Pet rules do not apply to service animals and support animals.  Thus, housing providers may not limit the breed or size of a dog used as a service animal or support animal just because of the size or breed[44] but can, as noted, limit based on specific issues with the animal's conduct because it poses a direct threat or a fundamental alteration.[45]
- A housing provider may not charge a deposit, fee, or surcharge for an assistance animal.  A housing provider, however, may charge a tenant for damage an assistance animal causes if it is the provider's usual practice to charge for damage caused by tenants (or deduct it from the standard security deposits imposed on all tenants).
- A person with a disability is responsible for feeding, maintaining, providing veterinary care, and controlling his or her assistance animal.  The individual may do this on his or her own or with the assistance of family, friends, volunteers, or service providers.
- Individuals with disabilities and housing providers may reference the best practices provided in this guidance in making and responding to reasonable accommodation requests within the scope of this guidance for as long as it remains in effect.  HUD strongly encourages individuals with disabilities and housing providers to give careful attention to this guidance when making reasonable accommodation requests and decisions relating to animals.
- Failure to adhere to this guidance does not necessarily constitute a violation by housing providers of the FHA or regulations promulgated thereunder.[46]
- Before denying a reasonable accommodation request due to lack of information confirming an individual's disability or disability-related need for an animal, the housing provider is encouraged to engage in a good-faith dialogue with the requestor called the "interactive process."[47]  The housing provider may <u>not</u> insist on specific types of evidence if the information which is provided or actually known to the housing provider meets the requirements of this guidance (except as provided above).  Disclosure of details about the diagnosis or severity of a disability or medical records or a medical examination cannot be required.

---

[41] *See* Joint Statement Q and A 4 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.
[42] *See Warren v. Delvista Towers Condo. Ass'n*, 49 F. Supp. 3d 1082 (S.D. Fla. 2014).
[43] *See* Joint Statement, Q and A 11 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf; *Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt.*, 778 F. Supp. 2d 1028 (D.N.D. 2011).
[44] *See, e.g.*, *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277 (11th Cir. 2014) (reasonable accommodation to a housing provider's rule that all dogs must be under 25 pounds).
[45] *See* 24 C.F.R. § 100.202(d); Joint Statement, Q and A's 5 & 7 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.
[46] *See* "Treatment as a Guidance Document" on p.5 for a citation of authorities on permissible use of guidance.
[47] *See* Joint Statement, Q and A 7 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.

If a reasonable accommodation request, provided under the framework of this guidance, is denied because it would impose a fundamental alteration to the nature of the provider's operations or impose an undue financial and administrative burden, the housing provider should engage in the interactive process to discuss whether an alternative accommodation may be effective in meeting the individual's disability-related needs.[48]

---

[48] For guidance on what constitutes a fundamental alteration or an undue financial and administrative burden, refer to the HUD/DOJ Joint Statement on Reasonable Accommodation under the Fair Housing Act, available at https://www.hud.gov/sites/documents/huddojstatement.pdf.

# Guidance on Documenting an Individual's Need for Assistance Animals in Housing

This section provides best practices for documenting an individual's need for assistance animals in housing. It offers a summary of information that a housing provider may need to know from a health care professional about an individual's need for an assistance animal in housing. It is intended to help individuals with disabilities explain to their health care professionals the type of information that housing providers may need to help them make sometimes difficult legal decisions under fair housing laws. It also will help an individual with a disability and their health care provider understand what information may be needed to support an accommodation request when the disability or disability-related need for an accommodation is not readily observable or known by the housing provider. Housing providers may not require a health care professional to use a specific form (including this document), to provide notarized statements, to make statements under penalty of perjury, or to provide an individual's diagnosis or other detailed information about a person's physical or mental impairments.[49] Housing providers and the U.S. Department of Housing and Urban Development rely on professionals to provide accurate information to the best of their personal knowledge, consistent with their professional obligations. This document only provides assistance on the type of information that may be needed under the Fair Housing Act (FHA). The contents of this document do not have the force and effect of law and are not meant to bind the public in any way. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies. Further, this document does not create any obligation to provide health-care information and does not authorize or solicit the collection of any information not otherwise permitted by the FHA.[50]

> The Appendix to this Guide answers some commonly asked questions about terms and issues below. An understanding of the terms and issues is helpful to providing this information.

***

When providing this information, health care professionals should use personal knowledge of their patient/client – *i.e.*, the knowledge used to diagnose, advise, counsel, treat, or provide health care or other disability-related services to their patient/client. **Information relating to an individual's disability and health conditions must be kept confidential and cannot be shared with other**

---

[49] *See* Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Accommodations Under the Fair Housing Act ("Joint Statement"), Q and A's 13, 16-18 (May 17, 2004), at https://www.hud.gov/sites/documents/huddojstatement.pdf.

[50] This guidance does not expand on the obligations under the FHA or HUD's regulations and should be construed consistently with Executive Order 13891 of October 9, 2019 entitled "Promoting the Rule of Law Through Improved Agency Guidance Documents," Executive Order 13892 of October 9, 2019 entitled "Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication," the Department of Justice Memorandum of January 25, 2018 entitled "Limiting Use of Agency Guidance Documents in Affirmative Civil Enforcement Cases," and the Department of Justice Memorandum of November 16, 2017 entitled "Prohibition on Improper Guidance Documents."

**persons unless the information is needed for evaluating whether to grant or deny a reasonable accommodation request or unless disclosure is required by law.[51]**

As a best practice, documentation contemplated in certain circumstances by the Assistance Animals Guidance is recommended to include the following general information:

- The patient's name,
- Whether the health care professional has a professional relationship with that patient/client involving the provision of health care or disability-related services, and
- The type of animal(s) for which the reasonable accommodation is sought (i.e., dog, cat, bird, rabbit, hamster, gerbil, other rodent, fish, turtle, other specified type of domesticated animal, or other specified unique animal).[52]

**Disability-related information.** A disability for purposes of fair housing laws exists when a person has a physical or mental impairment that substantially limits one or more major life activities.[53] Addiction caused by current, illegal use of a controlled substance does not qualify as a disability.[54] As a best practice, it is recommended that individuals seeking reasonable accommodations for support animals ask health care professionals to provide information related to the following:

- Whether the patient has a physical or mental impairment,
- Whether the patient's impairment(s) substantially limit at least one major life activity or major bodily function, and
- Whether the patient needs the animal(s) (because it does work, provides assistance, or performs at least one task that benefits the patient because of his or her disability, or because it provides therapeutic emotional support to alleviate a symptom or effect of the disability of the patient/client, and not merely as a pet).

Additionally, if the animal is not a dog, cat, small bird, rabbit, hamster, gerbil, other rodent, fish, turtle, or other small, domesticated animal that is traditionally kept in the home for pleasure rather than for commercial purposes, it may be helpful for patients to ask health care professionals to provide the following additional information:

- The date of the last consultation with the patient,
- Any unique circumstances justifying the patient's need for the particular animal (if already owned or identified by the individual) or particular type of animal(s), and
- Whether the health care professional has reliable information about this specific animal or

---

[51] *See* Joint Statement, Q and A 18 (May 17, 2004), at
https://www.hud.gov/sites/documents/huddojstatement.pdf.
[52] *See, e.g.*, *Janush v. Charities Housing Development Corporation*, 169 F.Supp.2d 1133, 1136-37 (N.D. Cal. 2000) (rejecting an argument that a definition of "service dog" should be read into the Fair Housing Act to create a rule that accommodation of animals other than service dogs is per se unreasonable, finding that "the law imposes on defendants the obligation to consider each request individually and to grant requests that are reasonable.").
[53] 24 C.F.R. § 100.201.
[54] 24 C.F.R. § 100.201.

       whether they specifically recommended this type of animal.

It is also recommended that the health care professional sign and date any documentation provided and provide contact information and any professional licensing information.

## Appendix

**What are assistance animals?**

Assistance animals do work, perform tasks, provide assistance, or provide emotional support for a person with a physical or mental impairment that substantially limits at least one major life activity or bodily function.[55]

**What are physical or mental impairments?**

Physical or mental impairments include: any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine; or

Any mental or psychological disorder, such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability; or

Diseases and conditions such as orthopedic, visual, speech and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human Immunodeficiency Virus infection, mental retardation, emotional illness, drug addiction (other than addiction caused by current, illegal use of a controlled substance) and alcoholism.[56]

**What are major life activities or major bodily functions?**

They are: seeing, hearing, walking, breathing, performing manual tasks, caring for one's self, learning, speaking, and working.[57]

Other impairments – based on specific facts in individual cases -- may also substantially limit at least one major life activity or bodily function.[58]

**What are Some Examples of Work, Tasks, Assistance, and Emotional Support?**

---

[55] *See* 24 C.F.R. §§ 5.303; 960.705.
[56] *See* 24 C.F.R. § 100.201.
[57] *See* 24 C.F.R. § 100.201(b).
[58] *See* 24 C.F.R. § 100.201.

Some examples of work and tasks that are commonly performed by service dogs include[59]:
- Assisting individuals who are blind or have low vision with navigation and other tasks,
- Alerting individuals who are deaf or hard of hearing to the presence of people or sounds,
- Providing non-violent protection or rescue work,
- Pulling a wheelchair,
- Alerting a person with epilepsy to an upcoming seizure and assisting the individual during the seizure,
- Alerting individuals to the presence of allergens,
- Retrieving the telephone or summoning emergency assistance, or
- Providing physical support and assistance with balance and stability to individuals with mobility disabilities.

Some other examples of work, tasks or other types of assistance provided by animals include:[60]
- Helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors,
- Reminding a person with mental illness to take prescribed medication,
- Alerting a person with diabetes when blood sugar is high or low,
- Taking an action to calm a person with post-traumatic stress disorder (PTSD) during an anxiety attack,
- Assisting the person in dealing with disability-related stress or pain,
- Assisting a person with mental illness to leave the isolation of home or

to interact with others,
- Enabling a person to deal with the symptoms or effects of major depression by providing a reason to live, or
- Providing emotional support that alleviates at least one identified symptom or effect of a physical or mental impairment.

**What are examples of a patient's need for a unique animal or unique circumstances?[61]**

- The animal is individually trained to do work or perform tasks that cannot be performed by a dog.
- Information from a health care professional confirms that:
    - Allergies prevent the person from using a dog, or
    - Without the animal, the symptoms or effects of the person's disability will be significantly increased.
- The individual seeks a reasonable accommodation to a land use and zoning law, Homeowners Association (HOA) rule, or condominium or co-op rule.
- The individual seeks to keep the animal outdoors at a house with a fenced yard where the animal can be appropriately maintained.

---

[59] *See* 28 C.F.R. §§ 35.136(f); 36.302(c)(6).
[60] *See, e.g.*, *Majors v. Housing Authority of the County of DeKalb Georgia,* 652 F.2d 454, 457 (5th Cir. 1981); *Janush*, 169 F.Supp.2d at 1136-37.
[61] *See, e.g.*, *Anderson v. City of Blue Ash*, 798 F.3d 338, 360-63 (6th Cir. 2015) (seeking a reasonable accommodation to keep a miniature horse as an assistance animal).

19