IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | CASE NO. 2:21-cv-00977 CRE |
| § | |
| PERRY HOMES, INC. § | Magistrate Judge Cynthia Reed Eddy |
| ALLYSON WHITTINGTON, and § | |
| ROBERT WHITTINGTON § | |
| § | |
| Defendants § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
BRIEF IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(b)(1) and (b)(6)**

Perry Homes, Inc., Allyson Whittington and Robert Whittington, Defendants, file this Reply in Support of the Motion to Dismiss [Dkt. 19] as follows:

**I. DOJ has not sufficiently pled an unlawful act and so has failed to plead that SWPLS is an aggrieved person.**

  **A.  Each of the unlawful acts described in §3604(f) requires a person with a handicap.**

Each of the unlawful acts described in section 3604(f) requires discriminatory conduct *because* of the handicap of a "buyer or renter" or a "person." In this it differs from other parallel provisions in Section 3604. Subsections 3604(a) and (b) define unlawful acts with the formula "any person" "because of" followed by a list of illegal grounds for discrimination. These illegal grounds are not tied to a person – they are listed as abstract concepts. In contrast the parallel subsections (f)(1) and (f)(2) prohibit discrimination against any person because of "the handicap of" a buyer, renter or other person. The same is true of subsection (f)(3)(B). Liability requires not just "handicap," but the handicap of a person. In subsection 3604(f) handicap does not appear as an abstract concept; it exists only as a characteristic of some person. This was a deliberate choice

by Congress, for subsections 3604(c) and (d) use handicap as an abstract concept. Given this deliberate choice by Congress and the plain language of the statute an unlawful act under Section 3604(f) can only take place if there is a real, not a fictional, person with a handicap.

DOJ cites *Fair Hous. Justice Ctr., Inc. v. Cuomo*, 2019 WL 4805550 (S.D.N.Y. 2019) for the proposition that non-disabled testers can call on behalf of fictional relatives.[1] In *Cuomo* the Court specifically noted that: "Defendants appear to concede that the FHJC testers were applying on behalf of persons with mobility disabilities." *Id.* at *13. The decision is premised on the existence of real persons with disabilities and does not support DOJ's argument.

DOJ also relies on *Fair Hous. J. Ctr., Inc. v. Allure Rehab. Services LLC*, 2017 WL 4297237 (E.D.N.Y. 2017). The authority of this case is questionable, not only because it is not binding on this court[2] but also because it relies on the decision in *Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588 (S.D.N.Y. 2013). *Brooklyn Ctr.* was a class action on behalf of real people with disabilities[3] and its discussion of "reasonable accommodations" did not refer to requested accommodations under the FHA or Rehabilitation Act but rather to "accommodations" in the broader sense of programs that provide access to municipal services.[4] *Brooklyn Ctr.* did not support the holding in *Allure Rehab,* and *Allure Rehab* never considered the explicit statutory requirement of a person in Section 3604(f). It is not persuasive authority.

Finally, DOJ cites *Oregon Bureau of Lab. and Industries ex rel Fair Housing Council v. Chandler Apartments LLC,* 702 Fed. Appx. 544 (9th Cir. 2017), an unpublished opinion that cannot be used as precedent. In *Chandler Apartments* the defendant argued the "plaintiff or his associate"

---

[1] Response at p. 14.
[2] See, *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 at n. 7 (3d Cir. 1991).
[3] 980 F.Supp. at 596.
[4] 980 F.Supp. at 641.

**REPLY IN SUPPORT OF MOTION TO DISMISS**  Page 2 of 5

was required to have a handicap,[5] which is simply wrong; the plaintiff must only be an "aggrieved person." The Court never considered whether a subsection 3604(f) unlawful act could exist without a disabled person. The case does not justify disregarding the plain language of subsection 3604(f).

 B. **DOJ has not pled a violation of Section 3604(c) because Perry Homes only expressed a preference based on a particular accommodation, not a preference based on disability.**

DOJ offers only two cases that are even arguably analogous to the case before this Court, *Fair Hous. Justice Ctr., Inc. v. Cuomo*, 2019 WL 4805550 (S.D.N.Y. 2019) and *Fair Hous. Justice Center v. Allure Rehab Servs., LLC*, 2017 WL 4297237 at *6 (E.D.N.Y. 2017). Neither supports DOJ's position. The issue in *Fair Hous. Justice Ctr., Inc. v. Cuomo* was whether a policy that prohibited providing housing to anyone confined to a wheelchair violated various provisions of the FHA and related local laws. The prohibition was not on wheelchairs, it was on individuals with a disability that required them to use a wheelchair. This was clearly a preference based on disability, not on the nature of an accommodation. *Fair Hous. Justice Center v. Allure Rehab Servs.* concerned a refusal to provide American Sign Language interpretation services. ASL interpretation cannot be compared to emotional support animals. ASL interpretation is recognized as a critical accommodation and even required by regulations under Section 504 Regulations for the Department of Defense[6] and HUD[7] among others and by the Americans with Disabilities Act itself.[8] There is no statute or regulation supporting the use of emotional support animals[9], and little or no support for them in the scientific literature.[10] Most citizens would not regard a policy against

---

[5] Id. at 546.
[6] 32 CFR §56.8(a)(11)
[7] 28 CFR §42.503(f)
[8] 42 U.S.C. §12103.
[9] HUD mentions emotional support animals only in a guidance that "does not expand or alter housing providers' obligations under the Fair Housing Act." FHEO-2020-01 at p. 5.
[10] See, 2021 Human Animal Interaction Bulletin, vol. 10, No. 2 at p. 1 ["While anecdotal accounts describe mental health recovery-related benefits of having Emotional Support Animals (ESAs), to

emotional support animals as anything but a landlord's preference for other, equally effective forms of accommodation, especially when the landlord specifically permits service animals for those with disabilities. There was no violation of subsection 3604(c).

## II. DOJ has not pled that SWPLS suffered an injury caused by a discriminatory housing practice.

None of DOJ's case support the idea that an organization like SWPLS can spontaneously decide to engage in testing and then claim the costs of testing as an injury if the testing reveals discrimination. Unlike the cases cited by DOJ SWPLS's did not test in response to a complaint of discrimination; it tested to see if might find discrimination. DOJ first alleges in paragraph 14 that SWPLS instructed and trained its testers and then alleges, in paragraphs 19 and following, that SWPLS discovered the alleged discrimination through the testing program. The resources supposedly diverted from other programs were the resources used to create the testing program *before SWPLS even knew discrimination existed.* This is clear in paragraph 26 of the Amended Complaint:

> SWPLS trained and instructed testers, prepared tester profiles, coordinated tests, organized appropriate follow-up tests, obtained reports from testers, and analyzed the information in those reports. As a result of this diversion of resources, SWPLS was unable to undertake other activities it had planned, including, but not limited to, taking steps to develop certain resources to enhance its outreach capabilities, and conducting additional testing and outreach in its service areas.

Moreover, those resources were expended as part of SWPLS's ordinary activities, as DOJ admits in paragraph 13:

> In particular, SWPLS' Fair Housing Law Center represents victims of housing discrimination, conducts testing to investigate allegations of housing discrimination throughout western Pennsylvania and northern West Virginia, and educates those in the service area through training and outreach.

---

date there have been no studies on such within peer-reviewed journals."] (copy attached as Exhibit 1).

Testing may be a valuable tool, but SWPLS did not test in response to or because of the conduct of the Defendants. The holding in *Montgomery Newspapers* applies directly to what DOJ has alleged about SWPLS' testing program: "An organization cannot, of course, manufacture the injury necessary to maintain a suit. . . ." *Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 79 (3d Cir. 1998).

## CONCLUSION

DOJ knows all the relevant facts but has been unable allege that Defendants' conduct caused SWPLS to incur any expense or identify a single program SWPLS could not pursue because of its testing program. It has not alleged that an emotional support animal is a necessary accommodation for anyone. With no allegation of an unlawful act and no allegation of an injury the Motion to Dismiss should be granted.

Signed December 13, 2021.

_____  
Richard M. Hunt  
Texas State Bar No. 10288700  
rhunt@hunthuey.com  
*PRO HAC VICE*

HUNT HUEY PLLC  
3333 Lee Parkway, Suite 600  
Dallas, Texas  75219  
Telephone:  (214) 641-9182  
Facsimile:  (214) 279-6124

_____/s/_____  
Jen Gilliland Vanasdale  
Pennsylvania Bar No. 87407  
jennifer@gvlawoffice.com  
Gary T. Vanasdale  
Pennsylvania Bar No. 87802  
gary@gvlawoffice.com

Gilliland Vanasdale Sinatra Law Office, LLC  
257 South Main Street  
Butler, PA  16001  
724.741.0536 phone │ 724.741.0538 fax  
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on December 13, 2021 the foregoing Reply in Support of Motion to Dismiss was served on all counsel of record through the Court's ECF system in accordance with Rule 5 of the Federal Rules of Civil Procedure.

_____  
Richard M. Hunt