IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | 2:21-CV-00977-MJH-CRE |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PERRY HOMES, INC., ALLYSON | ) | |
| WHITTINGTON, ROBERT | ) | |
| WHITTINGTON, | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |

## REPORT AND RECOMMENDATION

Cynthia Reed Eddy, Chief United States Magistrate Judge.

### I.    RECOMMENDATION

Plaintiff United States of America, on behalf of Southwestern Pennsylvania Legal Services, Inc. ("SWPLS"), initiated this civil action on July 23, 2021, against Defendants Perry Homes, Inc., and Allyson and Robert Whittington, to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 ("Fair Housing Act" or "FHA") .  This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. §§ 1331 and 1345.

Presently before the court is Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 18). For the reasons that follow, it is respectfully recommended that Defendants' motion be granted in part and denied in part.

### II.    REPORT

A.  Background

1

Defendant Perry Homes "manages and owns three rental properties in Pennsylvania."[1] FAC (ECF No. 17) at ¶ 5. Defendant Robert Whittington is the majority shareholder and owner of Perry Homes. *Id*. at ¶ 8.  In addition, Perry Homes "manages, but does not own" another rental property, the German Street Property. *Id*. at ¶ 6.  Defendants Allyson and Robert Whittington own the German Street Property. *Id*. at ¶ 7.  SWPLS "is a non-profit legal aid organization," and its "mission is to improve and stabilize families, housing, and economic security for low-income and other vulnerable southwestern Pennsylvania residents by providing legal advice and representation." *Id*. at ¶ 12.  Relevantly, SWPLS operates the Fair Housing Law Center, which *inter alia*, "conducts testing to investigate allegations of housing discrimination throughout western Pennsylvania." *Id*. at ¶ 13.

"From October 2018 through February 2019, SWPLS conducted multiple phone tests to determine if Defendants would allow tenants with a disability-based need for an emotional support animal to live with such animal at the German Street property, McKim Street property, and Old Towne Rental properties." *Id*. at ¶ 19.  SWPLS testers[2] informed Perry Homes agents that they wished to rent properties, and asked if Perry Homes would make an exception to its "no-pets" policy for their emotional-support animals necessary for their disabilities, which they had medical documentation to support.  On each occasion, the agent informed the tester that Perry Homes permits only "registered service animals." *Id*. at ¶¶ 20-25.   According to SWPLS, it suffered injuries from these actions, including "diversion of resources from activities that the organization

---

[1] For ease of reference, these properties will be referred to as 1) Old Towne Rentals, 2) McKim Street Property, and 3) Hillside Drive Property.

[2] "'[T]esters' are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).

would otherwise have undertaken in order to devote those resources to identifying, evaluating, investigating, and counteracting Defendants' discriminatory housing policies." *Id*. at ¶ 26.

Thus, on August 27, 2019, SWPLS filed a complaint of discrimination with the U.S. Department of Housing and Urban Development ("HUD"). *Id*. at ¶ 28. On February 10, 2021, the Secretary issued a Charge of Discrimination under 42 U.S.C. § 3610(g)(2)(A), charging Defendants with engaging in discriminatory housing practices on the basis of disability due to their policy and practices regarding emotional support animals. *Id*. at ¶ 30. On February 23, 21021, Defendants "elected under 42 U.S.C. § 3612(a) to have the claims in the HUD Charge resolved in a civil action filed in federal district court." *Id*. at ¶ 31.

This action followed, and Plaintiff filed a Complaint in this Court on July 23, 2021. (ECF No. 1). Plaintiff subsequently filed the FAC, and on October 22, 2021, Defendants filed a motion to dismiss the FAC, and brief in support thereof, pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of standing) and 12(b)(6) (failure to state a claim). (ECF Nos. 18, 19). On November 29, 2021, Plaintiff filed a response, and on December 13, 2021, Defendants filed a reply. (ECF Nos. 28, 29). This matter is now ripe for disposition.

B.  Standard of Review

In considering a challenge to standing pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must first determine whether the challenge is facial or factual. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).[3] "In reviewing facial challenges to standing, we apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *Id*. at 633.

---

[3] Although the parties do not address whether Defendants' challenge is factual or facial, both parties point to the Rule 12(b)(6) standard that is used for a facial challenge. *See* Defs.' Br. (ECF No. 19) at 2; Pl.'s Br. (ECF No. 28) at 4.

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need to allege detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level" and be "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555.  Facial plausibility exists "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. [] Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

C.  Discussion

i. *Standing*

According to Defendants, SWPLS has failed to allege it "has suffered by injury caused by a discriminatory housing practice," and therefore "the claims made on behalf of SWPLS under Section 3612(o) fail." Defs.' Br. (ECF No. 19) at 2.  Thus, Defendants contend that this Court should dismiss the FAC due to Plaintiff's lack of Article III standing. *Id.* at 6.

"To establish Article III standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  As [t]he party invoking federal jurisdiction, a plaintiff bears the burden of establishing these elements." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018) (internal citation and quotation marks omitted).

Here, the United States of America commenced this action pursuant to 42 U.S.C. § 3612, which provides that once a charge is filed pursuant to the FHA, any party may elect to have the matter heard in District Court. 42 U.S.C. § 3612(a).  If an election is made under subsection (a), "the Attorney General shall commence and maintain [] a civil action on behalf of the aggrieved person in a United States district court seeking relief under this subsection." 42 U.S.C. § 3612(o).

The parties agree that the standard for an aggrieved person in a fair-housing case was set forth by the Supreme Court of the United States in *Havens*, *supra*. Pl.'s Br. (ECF No. 28) at 6; Defs.' Br. (ECF No. 19) at 6.

> The Supreme Court has established that Congress intended that standing under the Fair Housing Act be limited only by Article III and that the courts, as a result, may not create prudential barriers to standing under the Act. "[T]he sole requirement for standing to sue [under the Fair Housing Act] is the Art. III minima [*sic*] of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" *Havens*[, 455 U.S. at 372.] (citations omitted).

*Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 75 (3d Cir. 1998).

Specifically, In *Havens*, the Supreme Court held that at the motion to dismiss stage of proceedings, a fair housing organization established standing as an aggrieved party where it "had to devote significant resources to identify and counteract the defendant's racially discriminatory steering practices." 455 U.S. at 379.  The Third Circuit has interpreted *Havens* on several occasions.  In *Fair Hous. Rts. Ctr. in Se. Pennsylvania v. Post Goldtex GP, LLC*, 823 F.3d 209 (3d Cir. 2016), the plaintiff, a non-profit corporation which "provides counseling, reference, advocacy, and dispute resolution services to individuals who may have suffered from discriminatory housing practices throughout southeastern Pennsylvania," appealed from an order granting the defendants' motion to dismiss. *Id*. at 212.  On appeal, one defendant argued, *inter alia*, that the plaintiff lacked

standing because it suffered no injury.  The Third Circuit concluded "the FHRC has standing" and

offered the following. *Id*. at 214 n. 5.

> The Supreme Court specifically held that a fair housing group, like the FHRC, has standing to sue if the discriminatory practices it is challenging have impaired its ability to carry out its mission. *Havens*[, *supra*.] The FHRC's complaint alleges that the [defendants] engaged in discriminatory housing practices, and that its mission to eradicate housing discrimination has been frustrated because it has had to divert resources in order to investigate and prosecute the alleged discriminatory practices in this case. These allegations are sufficient to establish standing. And, as we have held, the allegation of discrimination is itself the harm.

*Id*. (citation omitted).  Similarly, in *Alexander v. Riga*, 208 F.3d 419, 427 n.5 (3d Cir. 2000), the

Third Circuit concluded that pursuant to *Havens*, "a fair housing organization [] is an 'aggrieved

person' under the statute and is entitled to obtain relief, including punitive damages."  The Third

Circuit pointed out that "the Supreme Court has held that a fair housing organization had standing

to sue if the discriminatory acts impaired the organization's ability to carry out its mission." *Id*.

One such factor the Third Circuit considered in concluding the organization had standing was the

fact that the organization "diverted resources to investigate and to counter the [defendants']

conduct." *Id*. See also *Fair Hous. Rts. Ctr. in Se. Pennsylvania v. Morgan Properties Mgmt. Co.,*

*LLC,* 2017 WL 1326240, at *10 (E.D. Pa. Apr. 11, 2017) (denying Defendant's motion for

judgment on the pleadings for lack of standing where fair-housing-organization plaintiff asserted

it "was forced to conduct an extensive investigation of Defendants' discriminatory actions, and []

had to divert significant resources in order to prevent discrimination"); *Fair Hous. Rts. Ctr. in Se.*

*Pennsylvania v. SJ Lofts, LLC*, 2021 WL 2823073, at *1 n.4 (E.D. Pa. July 7, 2021) (same).

Defendants point to the Third Circuit's decision in *Montgomery Newspapers*, *supra*, in

support of their contention that Plaintiff lacks standing. In *Montgomery Newspapers*, the Third

Circuit held that *at the summary judgment stage*, "something more than [] naked allegations" that

"track the language in *Havens*" were necessary to establish standing.  *Montgomery Newspapers*,

141 F.3d at 76.  However, the Third Circuit made clear that *Montgomery Newspapers* was distinct from *Havens*, and damage allegations that "track the language in *Havens* [] were sufficient to withstand a motion to dismiss." *Id*.

Here, a review of the damage allegations asserted by SWPLS are materially indistinguishable from those that were deemed sufficient to withstand a motion to dismiss in *Havens* and its related Third Circuit precedent.  SWPLS has alleged that its "resources were diverted and its mission [] frustrated due to the Defendants' discriminatory actions." FAC (ECF No. 17) at ¶ 36.  Because such allegations are adequate to survive a motion to dismiss, this Court respectfully recommends that Defendants' motion to dismiss for lack of standing be denied.

### ii.   Failure to State an FHA Claim

"The Fair Housing Act ('FHA') prohibits discrimination on the basis of 'race, color, religion, sex, familial status, or national origin' in a variety of real estate-related transactions. *See* 42 U.S.C. § 3604. In 1988, Congress extended the Fair Housing Act to protect against discrimination on the basis of disability." *Lee v. HUD*, 2021 WL 288884, at *4 (E.D. Pa. Jan. 28, 2021).  Here, Plaintiff has asserted FHA claims pursuant to four different subsections. *See* FAC (ECF No. 17) at ¶ 34. Defendants contend that Plaintiff has failed to state a claim for each of these provisions. *See* Defs.' Br. (ECF No. 19) at 7-19. This Court will consider each.

### a.   Subsection 3604(c) Claim

Section 3604(c) provides that it is unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).  Plaintiff alleges that Defendants'

written "no pets" policy, along with accompanying statements by Defendants' agents, were discriminatory with respect to those individuals who were disabled and required an emotional support animal, and therefore violated subsection 3604(c).

Defendants set forth a number of arguments as to why this policy did not violate this subsection. They contend that a "'no pets' policy does not indicate an intent to discriminate." Defs.' Br. (ECF No. 19) at 7. In addition, Defendants contend that this policy "does not express any preference related to disability because assistance animals that must be accommodated by a landlord [] at not 'pets.'" *Id*. at 7. It is Defendants' position that their policy that they will rent to people who have a disability and utilize a service animal satisfies the requirements of the FHA. *Id*. at 8.

> In determining whether a statement runs afoul of § 3604(c), courts adopt an "ordinary listener" standard. *Soules v. U.S. Dept. of Hous. & Urban Dev.*, 967 F.2d 817, 824 (2d Cir. 1992). Under this standard courts inquire whether a statement would suggest to an ordinary listener that a particular protected class is preferred or not preferred for the housing in question. *Id*. An ordinary listener hears statements in context and "is neither the most suspicious nor the most insensitive of our citizenry." *Id*.

*Fair Hous. Just. Ctr., Inc. v. Cuomo*, 2019 WL 4805550, at *15 (S.D.N.Y. Sept. 30, 2019).

In the FAC, Plaintiff asserts that Defendants had a written "no pets" policy. FAC (ECF No. 17) at ¶¶ 15-17. According to Plaintiff, when some testers inquired about the availability of units, the agents asked if the individuals had any pets. *Id*. at ¶¶ 21, 23. On one occasion, a tester inquired about a unit, and the agent "asked whether the tester had any pets." *Id*. at ¶ 21. "[T]he tester stated that her husband had post-traumatic stress disorder and had an emotional support animal to help him. The agent asked if the dog 'was registered as a service dog.'" *Id*. The tester responded that the "animal was an emotional support animal." *Id*. The agent responded that the Defendants allow only "'registered service animals' that have been trained for a specific duty, and that unless the

9

tester had documentation that the dog was a registered service animal, [Defendants] would not allow the dog at the property." *Id*. On another occasion, "[t]he tester stated that her son had an emotional support dog because of his autism and that she had documentation from her son's psychologist." *Id*. at ¶ 23. When the tester asked if the dog would be allowed, the "agent responded that there are 'differences between service animals and other animals' or words to that effect and that only service animals would be allowed." *Id*.

These statements by agents of Defendants are adequate at this stage of proceedings to demonstrate that Defendants may have demonstrated "preference, limitation, or discrimination based on [] handicap." 42 U.S.C. § 3604(c).  Accordingly, it is respectfully recommended that Defendants' motion to dismiss the subsection 3604(c) claim be denied.

        *b.   Subsection 3604(f)(1), (f)(2) and (f)(3)(B) Claims*

In the FAC, Plaintiff asserts three separate claims pursuant to subsection 3604(f).  "To establish a *prima facie* case of discrimination under § 3604(f)(1), a plaintiff must allege: '(1) that a person residing in or intending to reside in the dwelling after its sale or rental to the plaintiff had a handicap as defined in the FHA, (2) that the plaintiff sought and was qualified to purchase or rent the housing, (3) that he was rejected, and (4) that the rejection occurred in circumstances giving rise to an inference of discrimination on the basis of the handicap of the person residing or intending to reside with the plaintiff.'" *Cuomo*, 2019 WL 4805550, at *13.

"To establish a *prima facie* case under Section 3604(f)(2), a plaintiff must demonstrate: (1) that he or she was discriminated against; (2) that such discrimination occurred in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling; and (3) that such discrimination occurred because of a handicap of that buyer or renter, a person residing in or intending to reside in that dwelling, or any person

associated with that buyer or renter." 42 U.S.C. § 3604(f)(2)." *Wartluft v. Milton Hershey Sch. & Sch. Tr.*, 400 F. Supp. 3d 91, 105 (M.D. Pa. 2019).

To establish a reasonable accommodation claim pursuant to § 3604(f)(3), a plaintiff must allege that "(1) that the plaintiff ... had a handicap within the meaning of § 3602(h); (2) that the defendant knew or reasonably should have been expected to know of the handicap; (3) that the accommodation was likely necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation requested was reasonable; and (5) that the defendant refused to make the requested accommodation." *Cuomo*, 2019 WL 4805550, at *14.

> Under both Subsections (f)(1) and (f)(2), a plaintiff can demonstrate that he or she was discriminated against and thereby satisfy the first element of the *prima facie* FHA case by demonstrating that he or she suffered (1) intentional discrimination (also called disparate treatment); (2) indirect discrimination (also called disparate impact or discriminatory effect); or (3) that the defendant refused to make reasonable accommodations necessary to afford him or her equal opportunity to use and enjoy the dwelling at issue. *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005). "Under the first theory, a plaintiff can establish a *prima facie* case of intentional discrimination by showing that discriminatory intent against a protected group was a motivating factor for the challenged action." *Eastampton Ctr., L.L.C. v. Twp. of Eastampton*, 155 F. Supp. 2d 102, 111 (D.N.J. 2001) (citing *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995)). "The discriminatory purpose need not be malicious or invidious, nor need it figure in 'solely, primarily, or even predominantly' into the motivation behind the challenged action .... The plaintiff is only required to 'show that a protected characteristic played a role in the defendant's decision to treat [him or her] differently.'" *Cmty. Servs., Inc.*, 421 F.3d at 177.

> Second, "[t]o establish liability under the discriminatory effect theory, a plaintiff must establish a *prima facie* case that the challenged action has a discriminatory effect on a protected class." *Id*. (citing *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148 (3d Cir. 1977)).

> Third, to establish a claim of refusal to make reasonable accommodations, a plaintiff "need only plausibly plead enough facts to make out the three elements set forth in § 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity," where "necessity" means "that an accommodation be essential, not just preferable." 42 U.S.C. § 3604(f)(3)(B) ("For purposes of this subsection, discrimination includes ... a refusal to make reasonable accommodations in rules, policies, practices, or services, when such

11

accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."); *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 107-11 (3d Cir. 2018).

*Wartluft*, 400 F. Supp. 3d at 105-06.

With respect to each of the foregoing theories, Defendants assert that "[f]ictional people cannot be victims of discrimination." Defs.' Br. (ECF No. 19) at 10. Thus, according to Defendants, SWPLS cannot be aggrieved because "a real disabled person" was not injured. *Id*. at 12. Similarly, Defendants assert that there can be no FHA violation where a tester did not actually intend to rent a unit. *Id*. It is Defendants' position that these testers did not inform agents of their handicaps, were not discriminated against, and that the facts, as alleged, do not permit this Court to make such inferences. *Id*. at 13-16.

By arguing that the testers are not individuals who would have actually applied for or needed housing, or were pretending to be disabled, and therefore were not actually injured, Defendants are essentially reiterating their standing argument as an argument that Plaintiff has failed to state a claim. However, as discussed *supra*, in this Circuit and others, it is well-settled that a fair housing organization has standing to assert claims pursuant to section 3604(f), where the organization has suffered an actual injury. "Under defendants' theory, a fair housing organization could never have statutory standing to bring claims under § 3604(f) on its own behalf because it could not have a 'handicap' and be directly discriminated against. That is contrary to § 3602(i)'s definition of an aggrieved person [] and recent district court cases addressing claims asserted under § 3604(f)." *United States v. Hampton Corp., Inc.*, 502 F. Supp. 3d 1376, 1382 (D.N.D. 2020). Thus, this Court respectfully recommends that these arguments do not entitle Defendants to relief. "The Supreme Court has stated that courts should give an expansive interpretation to the provisions of the FHA in order to effectuate its purposes. [] It would run

12

contrary to the remedial purposes of the statute to hold that a defendant, acting with the intent of denying a handicapped person housing, could avoid liability merely because his efforts were unsuccessful." *Fowler v. Borough of Westville*, 97 F. Supp. 2d 602, 611 (D.N.J. 2000). Permitting SWPLS to proceed at this juncture effectuates the purpose of the FHA, which "is directed at the elimination of discriminatory conduct, not merely discriminatory results[.]" *Id*.

Turning to what Plaintiff has alleged in the FAC, viewing those facts in the light most favorable to Plaintiff as the nonmoving party, Plaintiff asserts that each tester was either disabled or had a disabled family member, the tester sought to rent housing from Defendants and was otherwise qualified to rent, and that the tester would be unable to rent the housing because he or she was informed that a necessary emotional assistance animal would not be permitted pursuant to a blanket no-pets policy that only permitted exceptions for trained service animals. *See* FAC (ECF No. 17) at ¶¶ 19-24.

In considering Plaintiff's claims pursuant to subsections 3604(f)(1) and (f)(2), the FAC is not entirely clear about whether Plaintiff is asserting disparate treatment claims, disparate impact claims or both. While the facts, as alleged, could arguably support either or both,[4] this Court respectfully recommends that Defendants' motion be granted, and Plaintiff be permitted to amend the complaint to clarify its causes of action as to these two subsections.

Plaintiff also asserts a failure-to-accommodate claim pursuant to subsection 3604(f)(3)(B). "Under the FHA, 'a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling,' constitutes illicit 'discrimination.' 42 U.S.C.

---

[4] This conclusion is for the purposes of the motion to dismiss stage only, and may be revisited at the summary judgment stage.

§ 3604(f)(3)(B)." *McKivitz v. Twp. of Stowe*, 769 F. Supp. 2d 803, 824 (W.D. Pa. 2010). "Consequently, an accommodation is statutorily required when it is both reasonable and necessary to provide handicapped individuals with an equal opportunity to use and enjoy housing." *Id.* "[T]he plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodation is unreasonable." *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 457 (3d Cir. 2002).

It is Plaintiff's position that Defendants violated this subsection of the FHA by failing to make an exception to the no-pets policy for the emotional support animals needed by testers or members of the testers' family. Specifically, Plaintiff alleges that each tester informed Defendants' agent that the tester or someone else in the family had an emotional support animal and accompanying documentation demonstrating the need for that animal. FAC (ECF No. 17) at ¶¶ 20-25. Viewing these facts in the light most favorable to Plaintiff as the non-moving party, Plaintiff has met its burden at this time to show that the requested accommodation was necessary so that the handicapped person could reside in the property. Thus, the burden shifts to Defendants to show that its failure to make an exception to the no-pets policy was reasonable. Defendants contend that they offered an alternative accommodation. Specifically, it is Defendants' position that a service dog is a reasonable accommodation in these situations. Defs.' Br. (ECF No. 19) at 14. However, it is Defendants' burden to demonstrate that permitting a completely different animal than the one each tester currently had is a reasonable alternative. At this stage of proceedings, that burden has not been met, and it is respectfully recommended that Defendants' motion to dismiss Plaintiff's failure-to-accommodate claim be denied.

D.    <u>Conclusion</u>

It is respectfully recommended that Defendants' motion to dismiss for lack of standing be denied.  It is also respectfully recommended that Defendants' motion to dismiss both the subsection 3604(c) claim and the failure-to-accommodate claim pursuant to subsection 3604(f)(3)(B) be denied. Finally, it is respectfully recommended that Defendants' motion to dismiss the claims pursuant to subsections 3604(f)(1) and (f)(2) be granted, and  Plaintiff be permitted to file an amended complaint to clarify these causes of action.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until **May 27, 2022,** to file objections to this report and recommendation.  Unless Ordered otherwise by the District Judge, responses to objections are due on **June 10, 2022**.  Failure to file timely objections may constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: May 13, 2022

Respectfully submitted,

<u>s/ Cynthia Reed Eddy</u>

Chief United States Magistrate Judge

cc:    Marilyn J. Horan

United States District Judge

*via electronic filing*

Counsel of record

*via electronic filing*

15