IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA §<br>§<br>  Plaintiff §<br>§<br>v. §<br>§<br>PERRY HOMES, INC. §<br>ALLYSON WHITTINGTON, and §<br>ROBERT WHITTINGTON §<br>§<br>  Defendants §| CASE NO. 2:21-cv-00977 |

**OBJECTION TO MAGISTRATE'S**
**REPORT AND RECOMMENDATION**

Perry Homes, Inc., Allyson Whittington and Robert Whittington (collectively, "Perry Homes") object to the Magistrate's Report and Recommendation [Dkt. 35] concerning their Motion to Dismiss [Dkt. 18, 19] as follows:

**INTRODUCTION**

DOJ brought this fair housing action under 42 U.S.C. §3612(o). Its right to sue therefore depends on whether the underlying complainant, Southwest Pennsylvania Legal Services ("SWPLS") is an "aggrieved person" as defined in 42 U.S.C. §3602(i).[1] That depends in turn on whether SWPLS suffered an injury caused by a discriminatory housing practice. *Id.* "Discriminatory housing practice" is defined by 42 U.S.C. §3602(f) as an act made unlawful by various provisions of the Fair Housing Act. In this case DOJ claims that SWPLS was injured by violations of §§3604(c), (f)(1), (f)(2) and (f)(3)(B), all of which concern disability[2] discrimination. To state a claim or show SWPLS has standing to sue DOJ must allege at least one discriminatory

---

[1] Points of law that are not disputed are summarized in this Objection. The full argument appears in the original Brief in Support of Motion to Dismiss (Dkt. 19).
[2] In keeping with modern practice this Objection will use "disability" and similar words instead of the statutory term "handicap."

housing practice under these sub-parts of §3604 and allege that discriminatory housing practice was a cause of injury to SWPLS.

DOJ's only allegation of misconduct by Perry Homes is that Perry Homes told five testers working for SWPLS it would allow a service dog but not an emotional support dog for a disabled individual.[3] Thus, to state a claim under the Fair Housing Act DOJ must allege that among the statements made by Perry Homes there is least one that amounts to a discriminatory housing practice that caused SWPLS some injury. The Amended Complaint fails to do this. As alleged SWPLS' "injury" occurred *before* the allegedly discriminatory acts. The Magistrate Judge was therefore mistaken when she found those injuries were caused by the allegedly discriminatory acts. The Magistrate Judge also mistakenly concluded that alleging Perry Homes expressed a preference for a particular disability accommodation - a service dog instead of an emotional support dog - was the same as alleging Perry Homes expressed a preference against disabled individuals. Finally, the Magistrate Judge mistakenly concluded that a fictional person could be a victim of discrimination. Because it was based on these mistakes the Report and Recommendation should be overruled and the case dismissed.

I.      **The portions of the Report and Recommendation to which Perry Homes objects.**

For the reasons set out in more detail below Perry Homes objects to the following sections in the Magistrate Judge's Report and Recommendation:

- Section II.C.i. concerning standing.

---

[3] Amended Complaint at ¶¶20-24. DOJ alleges in ¶25 that "on several occasions since October 2018, Perry Homes refused to make reasonable accommodations to its no-pets policy for renters who stated they had an emotional support animal for their disability" but provides no other facts. This is the kind of conclusory allegation that cannot withstand scrutiny under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and its progeny because it does not give fair notice of the claim.

- Section II.C.ii concerning failure state a claim, including subparts a), b), and c)

Perry Homes agrees that "it is not entirely clear about whether Plaintiff is asserting disparate treatment claims, disparate impact claims or both"[4] but this lack of clarity is irrelevant because the Amended Complaint fails to state a claim under either theory.

## II.     Overview of the statutes the Amended Complaint claims were violated.

The Amended Complaint alleges two kinds of disability discrimination. The first, found in 42 U.S.C. §3604(c), is discrimination in the abstract; statements made to anyone in the world that express a preference or limitation based on a protected class. The second, found in 42 U.S.C. §3604(f)(1), (f)(2), and (f)(3)(B) is discrimination directed those who are disabled or associated with someone who is disabled. They are not abstract; a fundamental element of a prima facie case under any of these sections is the existence of a person with a disability.

> To survive a motion to dismiss on such a claim [under 3604(f)(1)], a plaintiff must allege "(1) that an adverse action making the [dwelling] unavailable occurred, (2) that the action was taken against someone with a 'handicap,' and (3) 'that the adverse action was taken because of a [handicap].

*Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Assn., Inc.*, 468 F. Supp. 3d 800, 809 (W.D. Tex. 2020). Similarly:

> Both provisions [§3604(f)(1) and (f)(2) prohibit action taken "because of ... handicap," and, as such, require that plaintiffs show the existence of a disability within the meaning of the FHA in order to state a claim under these subsections.11

*Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015). And with respect to accommodation claims:

> To prevail [on a claim under §3604(f)(3)(B)], one must prove that (1) he is disabled within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the accommodation

---

[4] Report and Recommendation at p. 13.

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). As these cases and the plain language of the statute make clear, unless a person with a disability or their associate is a victim of discrimination there is no "discriminatory housing practice" under §§3604(f)(1), (f)(2) or (f)(3)(B).[5]

As will be shown in more detail below, there is no allegation in the Amended Complaint that any person with a disability was involved in the "testing" undertaken by SWPLS. Without a real person with a real disability there can be no discriminatory housing practice as defined in §§3604(f)(1), (f)(2) and (f)(3)(B). That leaves only a violation of §3604(c) as a possible claim for SWPLS. As shown below, there is no allegation of statements that violate §3604(c). First, though, this Objection will address an even more fundamental defect in the Amended Complaint; the lack of a plausible allegation that anything Perry Homes did was the cause of an injury to SWPLS.

**III.   The Magistrate Judge reached the wrong conclusion with respect to standing because she did not appropriately consider the requirement that the Defendants' conduct cause the alleged injury.**

The Report and Recommendation reaches the wrong conclusion concerning standing because it focuses on whether SWPLS suffered an injury instead of the equally important question of whether SWPLS suffered an injury *caused by Perry Homes*. As the Third Circuit has observed, an immutable requirement of standing is a "causal connection between the injury and the conduct

---

[5] DOJ has argued that it is not required to plead a prima facie case because this is not the "proper measure of whether a complaint fails to state a claim," citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). [DOJ Objection to Report and Recommendation, Dkt. 36]. Even under a more flexible standard a complaint must allege a plausible connection between the alleged discriminatory treatment and membership in a protected class: See, *Saunders v. Art Council of Princeton*, 2021 WL 6124315, at *2 (3d Cir. Dec. 28, 2021) holding that dismissal was proper where the plaintiff "failed to demonstrate any connection between the alleged preferential treatment and his membership in a protected class" and *Harris v. Poska*, 728 Fed. Appx. 149, 154 (3d Cir. 2018) (unpublished) holding that an employment discrimination plaintiff "must first plausibly claim that he is a member of a protected class."

complained of—the injury has to be "fairly trace[able] to the challenged action of the defendant. . . ." *Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers,* 141 F.3d 71, 74 (3d Cir. 1998). Causation only runs one way – events in the future cannot cause events in the past. To allege the necessary causal connection the Amended Complaint must allege that SWPLS expended resources *after* it learned of the supposed discriminatory conduct.

In this case the Amended Complaint does not allege, except in conclusory terms, the necessary causal connection. The relevant allegations are that SWPLS instructed and trained fair housing testers (Amended Complaint at ¶14), that it conducted multiple phone tests (Amended Complaint at ¶¶19-25) and "SWPLS suffered injuries as a result of Defendants' actions described in paragraphs 19-25." (Amended Complaint at ¶26). Although SWPLS claims its injuries were "as a result" of what happened during its testing, the allegations in the Amended Complaint make it clear that all the time and money spent by SWPLS was spent preparing to test or conducting tests. SWPLS alleges:

> SWPLS trained and instructed testers, prepared tester profiles, coordinated tests, organized appropriate follow-up tests, obtained reports from testers, and analyzed the information in those reports.

(Amended Complaint at ¶26). It was "[a]s a result of this diversion of resources," that "SWPLS was unable to undertake other activities. . . ." (Id.). The alleged discriminatory housing practices supposedly found during the testing could not be the cause of the money spent preparing and performing the tests because that money was spent before the alleged discrimination occurred. Based on the allegations in the Amended Complaint the expenditures by SWPLS are not "fairly traceable to the challenged action of the defendant." As in *Montgomery Newspapers,* the expenses

incurred were not "motivated by the advertisements at issue or by a complaint about advertising," 141 F.3d at 78[6] and could not have caused them.

In each of the Third Circuit cases discussed in the Report and Recommendation the allegations included a claim that the discriminatory acts came *before* the expenses of investigation. Two of the cases, *Fair Hous. Rights Ctr. in S.E. Pennsylvania v. Post Goldtex GP, LLC,* 823 F.3d 209 (3d Cir. 2016) and *Fair Hous. Rights Ctr. in S.E. Pennsylvania v. SJ Lofts, LLC*, 2021 WL 2823073, at *2 (E.D. Pa. July 7, 2021) concerned discrimination in the form of designing and building multi-family dwellings that did not comply with the accessibility standards in 42 U.S.C. §3604(f)(3)(C). The discriminatory conduct – building the apartments at issue – took place before any investigation by the plaintiff. The other circuit court opinion, *Alexander v. Riga*, 208 F.3d 419 (3d Cir. 2000) was brought after a landlord repeatedly gave false information to black prospective tenants while giving truthful information to white prospects. The proof of injury[7] included testimony that:

> the FHP staff "stopped everything else" and devoted all attention to this case. It, moreover, diverted resources to investigate and to counter the Rigas' conduct.

208 F.3d at 427 n.5. The "stopped everything else" testimony and the "counter the Rigas' conduct" testimony both showed that the plaintiff organization spent resources *after* discovering the discriminatory conduct. The same is true in *Fair Hous. Rights Ctr. in S.E. Pennsylvania v. Morgan Properties Mgt. Co., LLC,* 2017 WL 1326240 (E.D. Pa. Apr. 11, 2017). In that case the organizational plaintiff launched its investigation "after receiving" a complaint from a prospective tenant who was denied a disability accommodation. *Id.* at *1.

---

[6] *Montgomery News* was a summary judgment case with a different burden on the plaintiff, but whether applied to allegations or summary judgment evidence the requirement is the same; that is, the expenditure of money and resources must be caused by the discriminatory conduct.
[7] The case was decided at trial.

Unlike the cases cited above SWPLS spent its time and money looking for discrimination that would justify its expenditures. There was no discrimination before SWPLS conducted its tests; instead, those tests created the supposed discrimination. If money spent to create discrimination could satisfy the injury requirement in Article III then "Article III would present no real limitation" on a plaintiff's ability to turn past expenses into injuries cased by later discrimination See, *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990).

A comparison of the original Complaint [Dkt. 1] and the Amended Complaint [Dkt. 17] will show that DOJ made a few minor changes to the standing allegations after it was notified of the defects in the original Complaint as required by the Standing Order on Rule 12(b) Motions (Dkt. 4) It did not, however, state plainly that SWPLS spent time or money *after* "discovering" the supposed discrimination through its testing program. Under these circumstances no assumptions or liberal reading of the Complaint is appropriate. SWPLS spent time and money trying to find discrimination but it has not alleged that it spent any time or money *because* of the discrimination it claims to have found. Without an injury caused by Perry Homes' conduct SWPLS cannot be an "aggrieved party" and the claims made on its behalf must be dismissed.

**IV.    The Magistrate Judge reached the wrong conclusion concerning claims under 42 U.S.C. §3604(c) because denying a specific accommodation while offering another cannot be interpreted as a preference or limitation based on disability.**

The tales told by the testers working for SWPLS are very similar. Each tester told Perry Homes' employee that some relative was disabled and had an emotional support dog. The employee replied that Perry Homes only allows service animals for those with disabilities. In every case Perry Homes specifically agreed that it would accommodate a disability related need by

allowing a service animal for a person with a disability; the problem was not with the fictional disabled person's disability, but with their preferred accommodation.[8]

The Magistrate Judge correctly recognized that statements claimed to violate §3604(c) are judged by the reasonable person standard described in *Fair Hous. Just. Ctr., Inc. v. Cuomo*, 2019 WL 4805550, at *15 (S.D.N.Y. Sept. 30, 2019):

> In determining whether a statement runs afoul of § 3604(c), courts adopt an "ordinary listener" standard. *Soules v. U.S. Dept. of Hous. & Urban Dev.*, 967 F.2d 817, 824 (2d Cir. 1992). Under this standard courts inquire whether a statement would suggest to an ordinary listener that *a particular protected class* is preferred or not preferred for the housing in question. Id. An ordinary listener hears statements in context and "is neither the most suspicious nor the most insensitive of our citizenry." Id.

[emphasis added] The Magistrate failed, however, to distinguish between a preference based on a membership in a protected class and a preference for a particular accommodation. A landlord "does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012). Instead, according the HUD's guidance on the matter:

> When a housing provider refuses a requested accommodation because it is not reasonable, the provider should discuss with the requester whether there is an alternative accommodation that would effectively address the requester's disability-related needs. . . .

(May 17, 2004 Joint Statement of the Department of Housing and Urban Development and Department of Justice on Reasonable Accommodations under the Fair Housing Act). Every single tester who called Perry Homes was offered an alternative accommodation: waiver of the "no pets" policy for a trained service animal. No tester was ever told that Perry Homes did not want to rent to someone with a disability or that Perry Homes was unwilling to offer any accommodation at all. The allegations in the Amended Complaint show Perry Homes did exactly what the case law and

---

[8] Amended Complaint at ¶¶20 to 24.

HUD Guidance require; it offered an alternative accommodation it believed was reasonable. In every case there was no further conversation; none of the testers are alleged to have done anything in response to this offer but hang up. No reasonable person could interpret refusing one accommodation while expressly offering a different accommodation as a preference against those with disabilities.[9]

V.  **The Magistrate Judge reached the wrong conclusion with respect claims under §§3604(f)(1), (f)(2) and (f)(3) because she ignored the lack of any allegation that a disabled person was a victim of discrimination.**

As shown above, a discriminatory housing practice arising out of 42 U.S.C. §§3604(f)(1), (f)(2) of (f)(3)(B) cannot exist without a disabled person. The Magistrate Judge erroneously concluded that the Amended Complaint alleged the existence of such a person: "Plaintiff asserts that each tester was either disabled or had a disabled family member."[10] This is simply wrong. The only allegation is that a tester *said* someone was disabled, not that anyone really was disabled:

> ¶20 "After the SWPLS tester advised that her husband had an emotional support dog. . . ."
> ¶21 "the tester stated that her husband had post-traumatic stress disorder. . . ."
> ¶22 "The tester informed the agent that her son had autism. . . ."
> ¶23 "The tester stated that her son had an emotional support dog because of his autism. . . ."
> ¶24 "the tester told the agent that his wife had a stroke. . . ."

It cannot be assumed that this phrasing was accidental or implies the existence of a real person with a disability. After all, DOJ makes it clear these are testers, individuals who by definition lie about their situation.[11] Moreover, in keeping with the Standing Order on Rule 12(b)(6) Motions

---

[9] DOJ has suggested that this preference for a specific accommodation could constitute discrimination against individuals with a disability that required that one accommodation. (DOJ Objection to Report and Recommendation at p. 6). While DOJ makes this assertion its Objection there is no such allegation in the Amended Complaint; in fact, there is no allegation that any disability can only be accommodated by an emotional support animal.

[10] Report and Recommendation at p. 13.

[11] See, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982). ["'testers' are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for

[Dkt. 4] a draft of the Motion to Dismiss making precisely this argument was provided to the Department of Justice before it filed the Amended Complaint. If anyone with a disability had been involved in the testing DOJ would certainly have alleged it explicitly. There can be no unlawful discrimination under Sections 3604(f)(1), (f)(2) and (f)(3)(B) without a person with a disability and therefore nothing Perry Homes said or did was a discriminatory housing practice under these sections.

It appears the Magistrate Judge also believed that an organizational defendant did not need to allege a discriminatory housing practice to claim it was injured by such a practice. The logical failure is manifest; expenditures cannot be caused by discrimination if there was no discrimination in the first place.

The Magistrate Judge relied on two cases to support her conclusion that even without discrimination an organization could suffer an injury caused by discrimination. The first, *U.S. v. Hampton Corp., Inc.*, 502 F. Supp. 3d 1376, 1378 (D.N.D. 2020) concerned a fair housing organization that investigated apartment complexes after receiving tenant complaints. *Id.* at 1378. After identifying alleged violations it filed a HUD complaint that lead to the DOJ's lawsuit against the apartment owners. *Id.* The defendants challenged the organization's standing based two arguments; that it did not represent any tenant who was a victim of discrimination and that it had not itself been a victim of discrimination. *Id.* The court correctly concluded that the organization could "sue for its own injuries" (*Id.* at 1380) and that an "aggrieved person" is not required to be

---

the purpose of collecting evidence. . . .] and *Soules v. U.S. Dept. of Hous. and Urb. Dev.*, 967 F.2d 817, 820 (2d Cir. 1992) [HOME utilizes "testers ," individuals who impersonate applicants. . . .].

a direct victim of discrimination. *Id.* at 1381. The court never addresses the issue before this Court; that is, whether an organization can be an aggrieved person *when there was never any illegal discrimination at all.* An organization may suffer an injury caused by discrimination against someone else, but an act of unlawful discrimination remains a fundamental requirement for claims under the Fair Housing Act because an "aggrieved person" is by definition a person who "claims to be injured by a discriminatory housing practice." 42 U.S.C. §3602(i). In this case there is no claim of injury by a discriminatory housing practice under the three subsections of 42 U.S.C. §3604(f) because there is no claim that any person with a disability was subjected to unlawful discrimination.

The second case relied on by the Magistrate Judge, *Fowler v. Borough of Westville*, 97 F. Supp. 2d 602, 611 (D.N.J. 2000) is equally inapplicable. In *Fowler* the defense claimed that attempted discrimination against a truly disabled person was not actionable. It did not address whether there could be illegal attempted disability discrimination against a person who was not disabled or associated with a disabled person. There is simply no allegation of any discriminatory housing practice under §§3604(f)(1), (f)(2) and (f)(3)(B) because there is no allegation that anyone involved in the testing was disabled or associated with a real disabled person. Thus, no matter how much SWPLS spent or when it spent it there was no injury caused by a discriminatory housing practice and SWPLS is not an aggrieved person.

**VI.    The Magistrate Judge fails to address the missing allegations with respect to Sections 3604(f)(1) and (f)(2).**

Section 3604(f)(1), like its analog 3604(a), requires a bona fide intention to rent because without that intent a tester has not suffered any injury of the kind the statute seeks to prevent. See, *Bowman v. Wildwood of Lubbock, LLC*, 2020 WL 10458628, at *6 (N.D. Tex. Oct. 23, 2020). For

this reason alone the claims resting on supposed violations of Section 3605(f)(1) must be dismissed.

Similarly, there is no allegation that any tester was offered a rental on terms and conditions different from those offered to non-disabled prospective tenants.[12] Section 3604(f)(2) requires such an offer so claims based on injuries supposedly suffered by SWPLS arising from violations of Section 3604(f)(2) must be dismissed.

**VII. The Magistrate Judge reached the wrong conclusion concerning claims resting on a supposed violation of Section 3604(f)(3)(B) because there is no allegation that the fictional relatives had a disability related need for their fictional emotional support animals.**

The Magistrate Judge concluded that the need for an emotional support animal by the fictional relatives of the testers was sufficiently alleged because:

> Plaintiff alleges that each tester informed Defendants' agent that the tester or someone else in the family had an emotional support animal and accompanying documentation demonstrating the need for that animal.

(R&R at p. 14). Nowhere does the Amended Complaint allege that any of the testers told Perry Homes there was a need for the emotional support animal. Only two of the five paragraphs describing the tester calls claim Perry Homes was told about documentation:

> ¶20 "the SWPLS tester advised that her husband had an emotional support dog and had documentation from a psychologist for the dog. . . ."
>
> ¶23 ""The tester stated that her son had an emotional support dog because of his autism and that she had documentation from her son's psychologist. . . ."

It is useless to speculate on why none of the testers said "my son needs an emotional support dog" or something of the kind when need is an element of a prima facie case for accommodation. After all, DOJ alleges the testers were specifically trained for the testing and one would imagine their

---

[12] Except, of course, that the testers were offered a disability accommodation in the form of waiving Perry Homes' no pets policy for a service animal.

script included establishing the elements of a prima facie case. In any case it is clear there is no allegation that any tester ever told Perry Homes there was a need for the fictional animal belonging to the fictional relative. Similarly, there is no allegation that any of the fictional relatives actually had such a need because, of course, such an allegation would be absurd. Without an allegation of need there could be no requirement for an accommodation.[13]

### VIII. The Magistrate Judge failed to address the lack of any allegation that an accommodation was denied.

Refusal is a necessary element of a claim under Section 3604(f)(3)(B)26 so the Amended Complaint can only allege unlawful discrimination based on Section 3604(f)(3)(B) if it alleges an actual or constructive refusal to accommodate. There is no allegation of either, a point the Magistrate Judge does not address in her Report and Recommendation.

### CONCLUSION

Testing has long been accepted as a way to uncover discrimination, but since the decision in *Havens Realty Corp.* it has been clear that whether a tester suffers from unlawful discrimination depends on the section of the FHA claimed to have been violated. Thus, a person acting under a pretext cannot be a victim of discrimination that requires a bona fide intention to rent or buy. *Havens supra*, 455 U.S. at 372. Except for §3604(c) every section on which the claims in this case rest requires a person with a disability. SWPLS testers were not disabled and they were not associated with any disabled person. No matter what they said to Perry Homes or Perry Homes said to them there could be no discriminatory housing practice because no one with a disability was involved. With respect to §3604(c) the only thing SWPLS proved by its testing is that Perry Homes will accommodate a person with a disability who has a service dog. Perry Homes never

---

[13] This is a case in which the idea that discovery might fill in the gaps is particularly in applicable. No amount of discovery will show that a fictional person needed a fictional animal because of their fictional disability.

did or said anything to indicate a discriminatory preference for those without disabilities; it only indicated that it did not like one kind of accommodation while offering another. There is no allegation that this the specific accommodation requested in each case – an emotional support animal - is in fact needed by any disabled person, real or fictional, or that the tester claimed the alternative was unacceptable, something that is required to state a claim for refusal to accommodate when an alternative is offered. *Vorchheimer v. Philadelphian Owners Assn.*, 903 F.3d 100, 112 (3d Cir. 2018).

The Amended Complaint is comprehensively defective. It does not allege that SWPLS suffered an injury caused by Perry Homes because it only alleges expenditures of time and money before Perry Homes did anything. It does not allege a violation of §3604(c) because the only things Perry Homes is claimed to have said indicate that it does not discriminate against those with disabilities. It does not allege a violation of any part of §3604(f) because it does not allege that any person with a disability was subjected to discrimination. Finally, it does not allege a violation of §3604(f)(3)(B) because it does not allege that any needed accommodation was ever refused. Without a discriminatory housing practice SWPLS cannot be an "aggrieved person" and without an "aggrieved person" there can be no claim. In fact, the suit is best understood as a fictitious suit to test the proposition that refusing to accommodate an emotional support dog violates the Fair Housing Act. It is fictitious because it rests on a fiction. There was never a disabled person, never an emotional support dog, never a need for accommodation and never any refusal to accommodate. The requirement of Article III standing serves to keep federal courts out of the business of determining hypothetical disputes, and this is exactly such a hypothetical dispute. The Report and Recommendation should be overruled and the Motion to Dismiss granted.

Signed on May 27, 2022

ATTORNEYS FOR DEFENDANTS

_____/s/_____
Richard M. Hunt
Texas State Bar No. 10288700
rhunt@hunthuey.com
*PRO HAC VICE*

HUNT HUEY PLLC
3010 Mountain Ash Court
Garland, Texas 75044
Telephone:  (214) 641-9182
Facsimile:  (214) 279-6124

_____/s/_____
Jen Gilliland Vanasdale
Pennsylvania Bar No. 87407
jennifer@gvlawoffice.com
Gary T. Vanasdale
Pennsylvania Bar No. 87802
gary@gvlawoffice.com

Gilliland Vanasdale Sinatra Law Office, LLC
257 South Main Street
Butler, PA  16001
724.741.0536 phone │ 724.741.0538 fax

## CERTIFICATE OF SERVICE

I certify that on May 27, 2022 the foregoing Reply in Support of Motion to Dismiss was served on all counsel of record through the Court's ECF system in accordance with Rule 5 of the Federal Rules of Civil Procedure.

_____
Richard M. Hunt