IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. Action No. 2:21-cv-977 |
| v. | ) | |
| | ) | Judge Marilyn J. Horan |
| PERRY HOMES, INC., | ) | |
| ALLYSON WHITTINGTON, and | ) | Chief Magistrate Judge |
| ROBERT WHITTINGTON, | ) | Cynthia Reed Eddy |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANTS' OBJECTIONS TO THE
MAGISTRATE'S REPORT AND RECOMMENDATION**

The United States, through its counsel, respectfully submits these Responses to

Defendants' Objections to the Magistrate's Report and Recommendation.

## I.     INTRODUCTION

This Court should adopt the Magistrate Judge's recommendation in her Report and

Recommendation that the Court deny Defendants' motion to dismiss based on their arguments

concerning standing and failure to state a claim upon which relief should be granted.  Report and

Recommendation ("Report"), ECF No. 35.  Contrary to Defendants' contentions, the Magistrate

Judge's recommendations are sound, well-reasoned, and based on the correct interpretation of the

law as applied to the United States' allegations in its Amended Complaint (hereinafter "FAC").[1]

---

[1] In the United States' Objections to the Report and Recommendation, the United States asserted that it should not be required to specify at this stage whether its claims under §§3604(f)(1) and (f)(2) are based on disparate treatment and/or disparate impact theories of discrimination, as recommended by the Magistrate Judge, and that it adequately pled these claims. The United States did not object to any other part of the Report. *See* United States' Objections to the Magistrate's Report and Recommendation, ECF No. 36.

In their objections, Defendants merely rehash contentions that the Magistrate Judge considered and rejected.[2]   Defendants' Objections to the Magistrate Judge's Report ("Defs.' Objections"), ECF No. 37.  The Court should deny Defendants' motion to dismiss in its entirety.[3]

## II.   BACKGROUND

The United States' Amended Complaint alleges that Southwest Pennsylvania Legal Services Inc. ("SWPLS), a fair housing organization that investigates discriminatory housing practices, hired testers to investigate Perry Homes after SWPLS discovered certain publications where Perry Homes articulated a strict "no-pets" policy.  FAC ¶¶ 12-17, ECF No. 17.  When the testers called Defendants posing as applicants seeking to rent units at Perry Homes' apartment complexes, Defendants' agents informed them that they do not permit emotional support animals. FAC ¶¶ 19-24.  The testers told Defendants' agents that household members with varying cognitive and mental disabilities (autism, post-traumatic stress disorder) used emotional support animals, and that they had documentation to support such use.  FAC ¶¶ 19-24.  In follow-up calls that testers conducted, Defendants' agents reiterated that emotional support animals were not allowed and the only exceptions to the no-pets policy was for trained service animals. FAC ¶¶ 23-24, 26.

"Emotional support animals" or "support animals" are different from "service animals," as that term is used in the Americans with Disabilities Act (ADA).  *See* United States Housing and

---

[2]   Under the authority of this Circuit, because the Defendants' objections merely restate arguments they already made before the Magistrate Judge, this Court should apply a deference standard to the Magistrate Judge's recommendations and review them for clear error, not under the *de novo* review standard.  *See generally*, *O'Brien v. Carolyn W. Colvin*, No. 12-6690, 2014 WL 4632222, at *3 (E.D. Pa. Sept. 16, 2014) ("Repeatedly, courts, both within and outside of the Third Circuit, have held that objections which merely rehash arguments presented to and considered by a magistrate judge are not entitled to *de novo* review.")(citing cases).

[3] Alternatively, if the Court adopts the Magistrate Judge's full Report, the United States respectfully seeks to file a second amended complaint to clarify whether its §§ 3604(f)(1) and (2) claims are based on disparate treatment and/or impact.

Urban Development Guidance, FHEO Notice 2020-01 at 3, ECF 28-2.  Under the ADA, a service

animal means "any *dog* that is *individually trained* to do work or perform tasks for the benefit of

an individual with a disability…." *Id.* at 6; *see also* 28 C.F.R. § 36.104 (Department of Justice

regulations implementing the ADA) (emphasis added).

Unlike the ADA, the Fair Housing Act (FHA) does not require that an emotional support

animal be "individually trained" for purposes of reasonable accommodation requests.  *Id*. at 3, 5.[4]

Whether a person with a disability needs an emotional support animal or a service animal depends

on the nature of the person's disability and the reason he or she needs the animal; the two types of

animals are not interchangeable.  Frequently, service animals, which are specially trained, assist

persons with physical disabilities, such as persons with visual impairments, whereas emotional

support animals assist persons with mental health needs.  *Eg.*, *United States v. E. River Hous.*

*Corp.,* 90 F. Supp. 3d 118,  124-29 (S.D.N.Y. 2015) (the court describes two aggrieved persons

whose anxiety and depression are alleviated with the assistance of emotional support animals).

The United States alleges that Defendants' practice of prohibiting emotional support

animals and allowing only service animals discriminates against persons with disabilities.

Specifically, this housing practice gives rise to the following violations under FHA:

- § 3604(c), which prohibits statements expressing a "preference, limitation, or discrimination based on disability;"

- § 3604(f)(1), which makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter;"

---

[4] *See also Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc.*, 778 F. Supp. 2d 1028, 1035-36 (D.N.D. 2011) ("the FHA encompasses all types of assistance animals regardless of training, including those that ... ameliorate a mental disability").

- § 3604(f)(2), which makes it unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling …, because of a handicap of that person;" and,

- § 3604(f)(3)(B) which provides that discrimination includes "a refusal to make reasonable accommodations in rules, policies or practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

FAC ¶¶ 33, 34.   These claims, and the related allegations in the United States' Amended Complaint, merit denial of Defendants' motion to dismiss.

### III.   ARGUMENT

#### A.   The Magistrate Judge's Recommendation Regarding Standing is Correct.

This Court should adopt the Magistrate Judge's recommendation to deny Defendants' motion to dismiss for lack of standing because the Magistrate Judge correctly analyzed the legal principles and applied them to the allegations in the Amended Complaint.   Report 5-8.   In their objections, Defendants raise the same standing arguments that they raised in their initial moving papers, which the Magistrate Judge considered, and properly rejected.   *Id*.; *see also* Defs.' Br. in Support of Mot. to Dismiss 6, ECF No. 19 (hereinafter "Mot. to Dismiss").

1.   The Magistrate Judge Correctly Found that the United States Alleges that Defendants' Discriminatory Conduct Caused Injury to SWPLS.

Defendants argue that the United States fails to allege that SWPLS suffered injury "caused" by Defendants' discriminatory actions and that the Magistrate Judge did not consider this requirement.   Defs.' Objections 4-7.   Defendants' assertion is incorrect.   The Magistrate Judge explicitly considered this contention and rejected it, based on Supreme Court and Third Circuit precedent finding that the allegations of causation by organizational plaintiffs in those cases are

4

similar to those alleged by the United States on behalf of SWPLS in the Amended Complaint.

After reviewing the seminal Supreme Court case that governs this issue, *Havens Realty v. Coleman*, 455 U.S. 363, 372 (1982), and the Third Circuit decisions that Defendants claim the Magistrate Judge wrongly interpreted, [5] the Magistrate Judge concluded:

> Here, a review of the damage allegations asserted by SWPLS are materially indistinguishable from those that were deemed sufficient to withstand a motion to dismiss in Havens and its related Third Circuit precedent. SWPLS has alleged that its 'resources were diverted and its mission [] frustrated due to the Defendants' discriminatory actions.' FAC (ECF No. 17) at ¶ 36. Because such allegations are adequate to survive a motion to dismiss, this Court respectfully recommends that Defendants' motion to dismiss for lack of standing be denied.

Report 8.

Defendants recharacterize the allegations by contending that the SWPLS resources were spent *before* it discovered the discriminatory conduct, and not, "after," or "as a result of" the discriminatory conduct. Defs.' Objections 6-7. But the allegations indicate that SWPLS suffered injury that was caused by Defendants' discriminatory conduct, as the Magistrate Judge ultimately found when she acknowledged that the Amended Complaint alleged that SWPLS suffered injuries *due to* Defendants' actions described in paragraphs 19-25. Report 8 (quoting FAC ¶ 36). Other allegations in the Amended Complaint emphasize that SWPLS' resources were diverted and its mission frustrated *by*, *due to*, or, *as a result of*, the discriminatory conduct of the Defendants. FAC ¶¶ 26, 27, 36. The Amended Complaint describes additional follow up testing, reporting, and analysis that SWPLS had to undertake once the initial testing revealed Defendants' illegal conduct.

---

[5] The Magistrate Judge carefully analyzed and relied on the several Third Circuit cases that interpreted *Havens*, including *Fair Hous. Rts. Ctr. v. Post Goldtex GP, LLC*, 823 F.3d 209 (3d Cir. 2016), *Alexander v. Riga*, 208 F.3d 419, 427 n.5 (3d Cir. 2000); *Fair Hous. Rts. Ctr. v. Morgan Props. Mgmt. Co., LLC,* 2017 WL 1326240, at *10 (E.D. Pa. Apr. 11, 2017); and *Fair Hous. Rts. Ctr. v. SJ Lofts, LLC*, 2021 WL 2823073, *1 n.4 (E.D. Pa. July 7, 2021). ECF No. 35 at 6-7.

*Id.* ¶¶ 23-24, 26.  As the Magistrate Judge properly explained, "[W]hen considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)."  Report 5.

Additionally, the Magistrate Judge properly considered the Third Circuit decision in *Fair Hous. Council v. Montgomery Newspapers*, 141 F.3d 71, 77-80 (3d Cir. 1998).  Report 5-6.  The Third Circuit in *Montgomery Newspapers* held that *at the summary judgment stage*, "something more than [] naked allegations" that "track the language in Havens" were necessary to establish standing.  141 F.3d at 76.  However, the Third Circuit made clear that the standard of proof is higher at the summary judgment stage than what is required at the complaint stage, so damage allegations that "track the language in *Havens* [] were sufficient to withstand a motion to dismiss." *Id.*; *see also* Report 8.  In sum, the Magistrate Judge correctly concluded that the allegations of injury in the Amended Complaint likewise track the language in *Havens*, and are sufficient to show causation and survive Defendants' motion to dismiss on standing grounds.

2.  The Magistrate Judge Correctly Rejected Defendants' Arguments that Tester Evidence is Insufficient.

In the memorandum in support of their Motion to Dismiss, Defendants asserted that "[f]ictional people cannot be victims of discrimination," and that SWPLS cannot be aggrieved because there was no injury to "a real disabled person."  Mot. to Dismiss 10, 12.  The Magistrate Judge correctly rejected Defendants' assertions as "essentially reiterating their standing argument."  Report 12.  Referencing the cases on standing she had discussed previously in her Report (i.e., *Havens* and the Third Circuit precedent),[6] the Magistrate Judge stated: "[i]t is well-

---

[6] In so doing, the Magistrate Judge also quoted the district court's opinion in *United States v. Hampton Corp., Inc.*, 502 F. Supp. 3d 1376, 1382 (D.N.D. 2020), which, in rejecting a similar argument, held: "Under defendants' theory, a fair housing organization could never have statutory standing to bring claims under § 3604(f) on its own behalf because it could not have a 'handicap' and be directly

settled that a fair housing organization has standing to assert claims pursuant to section 3604(f),

where the organization has suffered an actual injury." *Id.*; *see also Or. Bureau of Lab. & Indus.*

*ex rel. Fair Hous. Council v. Chandler Apartments, LLC*, 702 Fed. Appx. 544, 546 (9th Cir. 2017)

(unpublished decision) (citing *Fair Hous. Council v. Roommate.Com, LLC*, 666 F.3d 1216, 1219

(9th Cir. 2012) ("FHCO [the fair housing organization] and BOLI [the Oregon state enforcement

agency] both have standing to sue under the FHA even though the testers they used were not

actually disabled.  FHCO suffered injuries through the frustration of their organizational mission

and diversion of resources.")).

      In their objections, Defendants assert that there is "no [allegation regarding a] person with

a disability."  Defs.' Objections 10.  But, the Magistrate Judge correctly understood the United

States' allegations. The United States alleges that testers told Defendants' agents that household

members with varying cognitive and mental disabilities (autism, post-traumatic stress disorder)

used emotional support animals, and that they had documentation to support such use.  FAC ¶¶

19-24.  Nevertheless, Defendants' agents told the testers that the emotional support animals were

not permitted.  FAC ¶¶ 20-24, 26.  The Magistrate Judge stated:

> Plaintiff asserts that each tester was either disabled or had a
> disabled family member, the tester sought to rent housing from
> Defendants and was otherwise qualified to rent, and that the tester
> would be unable to rent the housing because he or she was informed
> that a necessary emotional assistance animal would not be
> permitted pursuant to a blanket no-pets policy that only permitted
> exceptions for trained service animals.  See FAC ¶¶ 19-24.

Report 13.  These allegations are more than sufficient. In sum, this Court should adopt the

Magistrate Judge's recommendation finding that the SWPLS has standing, and that the allegations

---

discriminated against. That is contrary to § 3602(i)'s definition of an aggrieved person [] and recent district court cases addressing claims asserted under § 3604(f)."  Report 12.

support the United States' claims of unlawful discrimination against persons with disabilities who need emotional support animals.

### B. The Magistrate Judge's Recommendation Regarding the United States' Claims for Discriminatory Statements under 42 U.S.C. § 3604 (c) is Correct.

The Magistrate Judge correctly opined that the Amended Complaint states a claim for relief under § 3604(c), because Defendants' statements express a "preference, limitation, or discrimination" against a subset of individuals with disabilities: those in need of emotional support animals.  Report 8-10.  Defendants contend once again, as they did in their initial moving papers, that they are only expressing a preference "for a particular accommodation," and "not a preference based on membership in a protected class."[7]  Defs.' Objections 8.  But, this is a false distinction; Defendants in fact expressed a preference, limitation, or discrimination against the subset of persons with disabilities who require emotional support animals.

As noted above, service animals and emotional support animals are not interchangeable. In its 2020 guidance on assistance animals, HUD lists examples of tasks performed by support animals compared with those of service animals.  *See* HUD Guidance, FHEO-2020-01 at 19: *Guidance on Documenting an Individual's Need for Assistance in Housing App'x*, ECF No. 28-2. The lists suggest that while support animals are often used to provide support for persons with certain types of disabilities, such as "psychiatric and neurological disabilities," "post-traumatic stress disorder," or diabetes, specially trained service dogs are often used to perform specific tasks for individuals with "mobility disabilities," or "individuals who are deaf or hard of hearing," for example.  *Id.*

---

[7] Defendants also argue, with respect to the § 3604(c) claim, that Perry Homes was willing to consider offering an alternative accommodation: permission to keep a service animal.  The United States addresses this argument below along with Defendants' other arguments concerning the § 3604(f)(3)(B) reasonable accommodation claim.  *See* discussion *supra* § III.C.1.

Just as it is actionable to express a preference against "wheelchair-users," or "language interpreters," — "accommodations" that are associated with a particular subset of persons with disabilities—so, too, is it preferential to say, as Defendants did here, "no emotional support animals allowed." *See, e.g.*, *Fair Hous. Justice Ctr., Inc. v. Cuomo,* No. 18-cv-3196, 2019 WL 4805550, at *2, *15 (S.D.N.Y. Sept. 30, 2019) (landlords' statements to fair housing testers inquiring on behalf of relatives who use wheelchairs that "wheelchairs are not allowed in the facility," indicated a "preference based on disability," so plaintiff stated a claim under § 3604(c)); *Fair Hous. Justice Ctr. v. Allure Rehab Servs., LLC*, No. 15-cv-6336, 2017 WL 4297237, at *6 (E.D.N.Y. Sept. 26, 2017) (landlords' statements to fair housing testers that they "refused to even consider providing ASL interpreters for the testers' relatives" indicated a preference based on disability, so plaintiff stated a claim under § 3604(c)); *Avakina ex rel. Fair Hous. Council v. Chandler Apartments, LLC*, No. 6:13-cv-1776, 2015 WL 413813, at *5 (D. Or. Jan. 30, 2015) *aff'd sub nom. Chandler Apartments, LLC*, 702 F. App'x 544 (summary judgment granted in favor of testing organization on the ground that statements to testers that owner did not allow service animals constituted discrimination under 42 US.C.§ 3604(c)).

Defendants' suggestion that a landlord must explicitly express an intent to discriminate against *all* persons with disabilities, or disallow *all* accommodations, in order for a plaintiff to state a claim under § 3604(c) is incorrect as matter of law.  For example, in *LaFlamme v. New Horizons, Inc.*, 605 F. Supp. 2d 378, 390 (D. Conn. 2009), the court granted summary judgment for the plaintiff after finding that a landlord's policy that distinguished between certain types of persons with disabilities (accepting those with physical disabilities while excluding those with mental health disabilities) constituted unlawful discrimination under the FHA.  Other courts have similarly refused to uphold Defendants' position that allowing an accommodation for service animals, which alleviate symptoms for persons with certain types of disabilities and not others, suffices under the

9

FHA. *E.g.*, *Castillo Condo. Ass'n v. U.S. Dep't of Hous. & Urban Dev.*, 821 F.3d 92, 98 (1st Cir. 2016) (association's refusal to permit a resident to keep an emotional support animal "constituted discrimination against Gimenez [the resident]"); *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, No. 6:11-cv-1637, 2012 WL 10511, at *4 (M.D. Fla. Jan. 3, 2012) (refusing to allow tenant's request to keep emotional support animal "is properly actionable under [§ 3604] (f)(2)");[8] *Ass'n of Apartment Owners v. Taylor*, 892 F. Supp. 2d 1268, 1287–88 (D. Haw. 2012) ("[T]he Court considers the development of the FHA . . . to include not only 'service animals' but 'assistance animals' as reasonable accommodations."); *Goldmark.,* 778 F. Supp. 2d at 1036 (concluding that the FHA encompasses "all types of assistance animals regardless of training," including "those that ameliorate a physical disability and those that ameliorate a mental disability").

### C. The Magistrate Judge's Recommendation Regarding the United States' Reasonable Accommodation Claim under 42 U.S. § 3604(f)(3)(B) is Correct.

The Magistrate Judge correctly concluded that the Amended Complaint states a claim under 42 U.S.C. § 3604(f)(3)(B) after reviewing Third Circuit precedent addressing the elements of a reasonable accommodation claim.  Report 13-14.   Defendants object to those conclusions on several grounds: 1) that Perry Homes offered tester applicants an alternative accommodation to use "service animals"; 2) that the Amended Complaint does not allege that emotional support animals were "necessary" to alleviate symptoms of a disability because testers described "fictional people"; and (3) that the Amended Complaint does not allege that Defendants actually refused a request for an accommodation.  Defs.' Objections 7-9, 12-13.  None of these arguments justifies granting Defendants' motion to dismiss.

---

[8] The Eleventh Circuit ultimately affirmed the district court's grant of partial summary judgment on the plaintiff's reasonable accommodation claim finding that Defendants violated the FHA by failing to allow the condominium resident to keep his emotional support animal.  *Bhogaita v. Altamonte Heights Condominium Ass'n, Inc*. 765 F.3d 1277, 1286-87 (11th Cir. 2014), *aff'ing*, *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc*., No. 6:11-cv-1637, 2012 WL 6562766, at *7 (M.D.Fla. Dec. 17, 2012).

1.  Defendants Have Not Met their Burden of Establishing That an Alternative Accommodation Was Sufficient.

Defendants argue that they did not violate the reasonable accommodation provision of the FHA because Perry Homes was allegedly willing to entertain requests for accommodations to allow a "service animal," as opposed to an emotional support animal.  Defs.' Objections 8.  The Magistrate Judge correctly rejected the notion that this argument justifies granting Defendants' motion to dismiss, noting that "it is Defendants' burden to demonstrate that permitting a completely different animal than the one each tester currently had is a reasonable alternative.  At this stage of proceedings, that burden has not been met."  Report 14; s*ee also, Vorchheimer v. Phila. Owners Assoc.*, 903 F.3d 100, 111 (3d Cir. 2018) (noting that assessing whether alternative accommodations offered by a landlord "typically requires a factual record, and developing that factual record requires discovery."); *Assisted Living Assoc. of Moorestown, L.L.C. v. Moorestown Twp.*, 996 F. Supp. 409, 434 (D.N.D. 1998) (stating that questions about the reasonableness of an accommodation are "highly fact-intensive").

Further, even if the Court does consider, at this juncture, Defendants' argument about an alternative accommodation, the United States disputes Defendants' factual contention that its offer to consider allowing tenants to keep a service animal is a sufficient alternative accommodation for a person who needs an emotional support animal.  The nature of a person's disability (and sometimes the residential setting) determines what type of accommodation will ameliorate symptoms of a disability.  *See* discussion *supra* p. 8.  Just as allowing a person to have a visual fire alarm or a sign language interpreter would not address a person with a mobility impairment's need for a wheelchair, permission to keep a service animal is not an appropriate accommodation for a person who does not need one but in fact needs an emotional support animal.

2.  The Amended Complaint Sufficiently Alleges That the Requests for Emotional Support Animals Were Tied to a Disability.

Defendants argue that the United States did not sufficiently establish the "necessity" prong

of the reasonable accommodation claim, because the testers described "fictional people." Defs.'

Objections 12. First, Defendants cite no legal authority in support of their position. Second, the

Magistrate Judge properly reasoned that "Defendants are essentially reiterating their standing

argument as an argument that Plaintiff has failed to state a claim." Report 12. As the Magistrate

Judge concludes, if the Court were to adopt Defendants' position, it would mean that a plaintiff

could never rely on tester evidence to state a claim under § 3604(f)(3)(B). *Id.* The United States

alleges in its Amended Complaint that the testers told Perry Homes representatives that their

relatives had emotional support animals due to their disabilities.

3. The United States Sufficiently Alleged that Perry Homes Denied Requests for Accommodation.

Finally, Defendants argue, with respect to the reasonable accommodation claim, that the

Amended Complaint does not allege that Perry Homes "refused" a request for an accommodation.

Report 13. Defendants' argument fails under even the least-generous reading of the Amended

Complaint. In this Circuit, a refusal to grant an accommodation turns on whether the housing

provider had an opportunity to accommodate. *Revock v. Cowpet Bay W. Condo. Assoc.*, 853 F.3d

96, 111 (3d Cir. 2017).

As the United States described in its Opposition to Defendants' Motion to Dismiss, the

law does not require an applicant to continue to volunteer ever more information in support of a

requested accommodation when a housing provider refuses to allow an accommodation after

having "an idea of what accommodation [an applicant] sought." USA's Opp'n to Defs.' Mot. to

Dismiss 20, ECF No. 28 (citing *id.* at 110). The Amended Complaint alleges that testers told Perry

Homes' agents that family members had emotional support animals because of specific

incapacitating conditions, so Defendants had "an idea of what accommodation" was sought and

why.  Am. Compl. ¶¶ 19-24.  By telling testers outright that emotional support animals—as

opposed to service animals—were not allowed at all, Defendants refused to even consider requests

for permission to keep emotional support animals as an accommodation.  Where it is extremely

unlikely that a housing provider will grant a reasonable accommodation, an applicant need not

request the accommodation.  *Moorestown*, 996 F. Supp. at 426 (finding an assisted living facility

did not even have to apply for a variance when doing so was futile).  Construing the Amended

Complaint in a light most favorable to the United States, as the Magistrate Judge did, it plainly

alleges that Perry Homes refused to accommodate the emotional support animals that testers said

their household members needed.  Report 14.

Thus, for all these reasons, the Court should adopt the Magistrate Judge's recommendation

and deny Defendants' Motion to Dismiss with respect to the United States' reasonable

accommodation claim.

### D. The Court Should Find the Amended Complaint States a Claim under §§ 3604(f)(1) and (f)(2).

Defendants contend that the wording of 42 U.S.C. § 3604(f)(1) makes it inapplicable to

SWPLS, because SWPLS' testers "did not have a bona fide intent to rent," and cite *Bowman v.*

*Wildwood of Lubbock, LLC*, 2020 WL 10458628, at *6 (N.D. Tex. Oct. 23, 2020).  Defs.'

Objections 11.  However, *Bowman* is inapplicable here.  *Bowman* involved a tester who claimed

to be a victim of discrimination and sought compensation for his own injuries.  Here, by contrast,

the United States does not claim that the individual testers are victims; the claim of the United

States is limited to injury to the organization, SWPLS, and SWPLS' injury was diversion of its

resources and frustration of its mission.  The United States further addressed Defendants'

contentions as to the sufficiency of its allegations under §§ 3604(f)(1) and (f)(2) in its Opposition

to Defendants' Motion to Dismiss and Objections to Report and Recommendation. ECF No. 28

and No. 36. The United States respectfully directs the Court to those memoranda for further explanation of how Defendants' conduct both made housing unavailable to certain applicants with disabilities based on those disabilities, as prohibited by § 3604(f)(1), and discriminated in the terms and conditions of housing for certain applicants with disabilities, as prohibited by § 3604(f)(2). [9]

## IV.   CONCLUSION

For the reasons stated herein, and as set forth in the United States' Opposition to Defendants' Motion to Dismiss (ECF No. 28) and the United States' Objections to the Magistrate Judge's Report and Recommendation (ECF No. 36), the Court should reject the Defendants' objections, and adopt the Magistrate Judge's recommendation on all points, with the exception of the portion that requires the United States to specify its theories of liability.  The Court should deny the Defendants' motion to dismiss in its entirety.  If the Court adopts the Magistrate Judge's recommendation in full, the United States respectfully seeks leave to file a second amended complaint to specify its theories of liability under §§ 3604(f)(1) and (2).

---

[9]  In a separate suit filed in this district court, on April 5, 2022, the United States alleges violations of these same FHA provisions in relation to two specific tenant-households. *See United States v. Perry Homes, Inc.*, No. 2:22-cv-526, ECF No. 1.  In response to the Court's show cause order as to why these two cases should not be consolidated (ECF No. 30), the United States responded that consolidation is appropriate because the two cases raise common issues of fact and law, and involve the same plaintiff, the same property, the same main defendant, and overlapping legal claims. ECF Nos. 31 and 33.

Dated: June 10, 2022                          Respectfully submitted,


CINDY K. CHUNG                                KRISTEN CLARKE
United States Attorney                        Assistant Attorney General
Western District of Pennsylvania              Civil Rights Division


   /s/ Jacqueline Brown                           /s/ Beth Pepper
JACQUELINE C. BROWN                           SAMEENA SHINA MAJEED
Assistant United States Attorney              Chief, Housing and Civil Enforcement Section
Civil Division                                CATHERINE A. BENDOR
Office of the U.S. Attorney                   Special Litigation Counsel
Western District of Pennsylvania              BETH PEPPER
700 Grant Street, Suite 4000                  Trial Attorney
Pittsburgh, PA 15219                          Housing and Civil Enforcement Section
Tel: (412) 894-7565                           Civil Rights Division
Fax: (412) 644-6995                           U.S. Department of Justice
E-mail:  jacqueline.c.brown@usdoj.gov         150 M Street, NE
PA Bar No. 330010                             Washington, DC  20002
                                              Tel: (202) 340-0916
                                              E-mail: Beth.Pepper@usdoj.gov

                                              *Attorneys for Plaintiff United States of America*